[Sac. No. 34.   In Bank.—December 10, 1895.]

ESTATE OF OZIAS WALKER, DECEASED.  LYDIA A. LANE, RESPONDENT, *v.* OLIVER M. WALKER, APPELLANT.

WILL—INFORMAL EXECUTION—MISTAKE IN SIGNATURE OF WITNESS—REVOCATION OF PROBATE.—Where a will, written by an attorney at law of the testator, was executed in the presence of the attorney and another person, who were requested by the testator to attest its execution as witnesses, and the attorney, in signing his name as a witness at the end of the will, inadvertently employed his own initials in connection with the testator's surname, and did not attach his own name to the will as a witness, the will is insufficiently executed, and the court may properly revoke its probate upon petition of an heir of the testator.

ID. — LEGISLATIVE AUTHORITY — COMPLIANCE WITH LAW ESSENTIAL.—The right to make a testamentary disposition of property is not an inherent right, nor a right granted by the constitution, but it rests wholly upon the legislative will, and is derived entirely from the statutes; and in conferring that right the legislature has seen fit to prescribe certain requirements in reference to the execution and authentication of the instrument, a compliance with which is necessary to the exercise of the right.

ID.—CONSTRUCTION OF STATUTE OF WILLS—INTENTION OF TESTATOR—LEGISLATIVE INTENT.—The rule governing the interpretation of wills, which recognizes and endeavors to carry out the intention of the testator, cannot be invoked in the construction of the statute regulating their execution, in respect to which the courts do not consider the intention of the testator, but only that of the legislature.

ID.—PROVINCE OF COURT—SUPREMACY OF LEGISLATIVE MANDATES—TECHNICALITIES.—It is not within the province of the courts to say that the statutory requirements in respect to the execution and authentication of wills, or any of them, are mere formalities, which may be waived without impairing the *status* of the instrument, or that a mode of execution or authentication, other than that prescribed by law, subserves the same purpose; but the legislative mandates are supreme, and although a failure to comply with them is of a nature purely technical, the court cannot dispense with technicalities imposed by the law-making power upon the maker of a will.

ID.—PECULIARITIES OF CALIFORNIA STATUTE—ENGLISH AUTHORITIES INAPPLICABLE.—The California statute differs from the English statute, in requiring a subscription of the name of the witness at the end of the will, and the English decisions as to what constitutes a signing under the English statute are inapplicable; and no other mode of subscription than that required by the California statute will answer the purpose in this state.

ID.—PROVING OF WILL—COMPLIANCE WITH LAW—WISHES OF TESTATOR.— In proving a will, the sole consideration before the court is whether or not the legislative mandates have been complied with, and the wishes of the testator cannot be considered.

Appeal from orders of the Superior Court of Butte County revoking the probate of a will and denying a motion for a new trial. John C. Gray, Judge.

The facts are stated in the opinion of the court.

*C. G. Warren,* and *F. C. Lusk,* for Appellant.

The signing of the witness was sufficient, as he intended the name written to be his signature. The initials of the witness amount to a sufficient subscription if placed for their signature. A witness need not sign his own name, if the name actually subscribed be intended to represent his name. (*Adams* v. *Chaplin,* 1 Hill Eq. 265; 1 Jarman on Wills, 5th Am. ed., 213; 4th Am. ed., 73, and American note; *Goods of Christian,* 2 Rob. Ecc. 110.) A witness may sign by a fictitious name. (*Goods of Maddock,* 3 L. R. Pro. & D. 169; 1 Redfield on Wills, 229, c. VI, sec. 4; 1 Wœrner's American Law of Administration, 63, 71; *Goods of Redding,* 2 Rob. Ecc. 339; *Goods of Eynon,* 3 L. R. Pro. & D. 92; *Goods of Ashmore,* 8 Curt. Ecc. 756; *Pryor* v. *Pryor,* 29 L. J. Prob. 114; *Goods of Clarke,* 4 Jur., N. S., 243; *Long* v. *Zook,* 13 Pa. St. 400; *Goods of Oliver,* 2 Spinks, 57; *Goods of Sperling,* 3 Swab. & T. 272; 33 L. J. Prob. 25; *Potts* v. *Felton,* 70 Ind. 166; *Lord* v. *Lord,* 58 N. H. 7; 42 Am. Rep. 565.) The principal thing is the intent to sign. (*Knox's Estate,* 131 Pa. St. 220; 17 Am. St. Rep. 798; *Plate's Estate,* 148 Pa. St. 55; 33 Am. St. Rep. 805; Browne on Statute of Frauds, sec. 362; *Brown* v. *Butcher's etc. Bank,* 6 Hill, 443; 41 Am. Dec. 755.) Testamentary dispositions of property are favored; hence it has always been ruled that a substantial compliance with the statute, as to attestation and execution, is sufficient. (*In re Beckett,* 103 N. Y. 167; *In re Hunt,* 110 N. Y. 278; *In re Voorhis,* 125 N. Y. 765; *In re Guilfoyle,* 96 Cal. 598.) Nothing more is required of the witness in signing than the testator. (Civ. Code, sec. 1276. See the word "subscribe" in Bouvier's, Webster's, Worcester's, and Century Dictionaries.)

*William H. Schooler,* and *Reardon & White,* for Respondent.

The four things required by section 1276 of the Code of Civil Procedure to be done must concur in order to constitute a valid will. (*Estate of Martin,* 58 Cal. 532; *Estate of Billings,* 64 Cal. 427; *Chaffee* v. *Baptist etc. Convention,* 10 Paige, 85; 40 Am. Dec. 228; *Remsen* v. *Brinckerhoff,* 26 Wend. 325; 37 Am. Dec. 253.) The terms "subscribe an instrument" and "sign the party's or witness' name thereto" are not synonymous. (Code Civ. Proc., secs. 446, 1276, 1278, 1387.) The statute fixes an inflexible rule by which to determine the proper execution of all testamentary instruments. (*Estate of O'Neil,* 91 N. Y. 521; *Grabill* v. *Barr,* 5 Pa. St. 441; 47 Am. Dec. 418; *Estate of Martin, supra.*) If the witness intended the name written to represent his name, it was equivalent only to a mark, and insufficient, because not attested as required by section 17 of the Code of Civil Procedure, and section 14 of the Civil Code. (*Goods of Redding,* 2 Rob. Ecc. 3.) In passing upon the question of whether a will is properly executed or not, the courts do not consider the intention of the testator, but that of the legislature. (*Matter of O'Neil, supra; Estate of Martin, supra; Estate of Billings, supra; Estate of Rand,* 61 Cal. 474; 44 Am. Rep. 555; *Chaffee* v. *Baptist etc. Convention, supra.*)

HENSHAW, J.—Appeals from the judgment revoking the probate of a will, and from the order denying a motion for a new trial.

The facts disclosed by the evidence without conflict are as follows: The will of Ozias Walker, deceased, was written by C. G. Warren, the attorney at law of the testator, and was executed in the presence of H. C. White and C. G. Warren, who were requested by the testator to attest, as witnesses, its execution. The requirements of the statute were complied with in all respects, saving that the witness C. G. Warren, in signing his name as a witness at the end of the will, inadvertently wrote the

name C. G. Walker, thus employing his own initials but the testator's surname.

Upon this showing the court revoked the probate of the instrument, and the propriety of its action in so doing is the sole question presented upon this appeal.

At the outset of this consideration it is proper to say that the right to make testamentary disposition of property is not an inherent right or a right of citizenship, nor is it even a right granted by the constitution. It rests wholly upon the legislative will, and is derived entirely from the statutes. In conferring that right the legislature has seen fit to prescribe certain exactions and requirements looking to the execution and authentication of the instrument, and a compliance with these requirements becomes necessary to its exercise. As has been said (*In re O'Neil*, 91 N. Y. 520, 521): "While the primary rule governing the interpretation of wills when admitted to probate recognizes and endeavors to carry out the intention of the testator, that rule cannot be invoked in the construction of the statute regulating their execution. In the latter case courts do not consider the intention of the testator, but that of the legislature."

As a prerequisite to the exercise of the testamentary right in this state, the legislature has prescribed for the execution and authentication of wills such as this the following requirements: 1. It must be subscribed at the end thereof by the testator himself, or some person in his presence, and by his direction must subscribe his name thereto; 2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority; 3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and 4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will, at the testator's request and in his presence. (Civ. Code, sec. 1276.)

It is not for courts to say that these requirements, or

any of them, are mere formalities which may be waived without impairing the *status* of the instrument. It is not for courts to say that a mode of execution or authentication, other than that prescribed by law, subserves the same purpose and is equally efficient to validate the instrument. The legislative mandates are supreme, and there is no right to make testamentary disposition except upon compliance with those mandates.

It may be freely conceded that the question under consideration is of a nature purely technical, but it is to be remembered that the whole subject matter of the execution and authentication of wills is technical and nothing else; and it must not be forgotten that the technicalities are those which the law-making power has the right to impose and has imposed upon the maker of a will.

It will be noted in the section of the code above quoted that the duty enjoined upon the testator is to subscribe the will, while that imposed upon the attesting witnesses is that each must sign *his name as a witness.* The difference is neither immaterial nor accidental. A testator may be illiterate, or he may by reason of paralysis, or other disabling cause, be incapacitated from signing his name, and the law has wisely and liberally provided for the due execution of a will by one so situated. It has required of him that he shall subscribe, and, while the word unquestionably has for one of its significations the signing of a name, it is a verb of comprehensive meaning. Any form or kind of underwriting is a subscription, and generally it has been held that any mark or writing by the testator meant by him to be his name, or to take the place of his signature, or to serve for his identification, will answer the requirements of a statute which calls merely for subscription or signing.

The same liberality of construction and interpretation has been put by the courts upon statutes which require the witnesses merely to subscribe or to sign.

There are thus numerous cases under such statutes which hold, in effect, that any signing by which alone or by which, aided by parol evidence, the identity of the subscriber may be ascertained, substantially complies with the statute.

The case of the appellant upon this proposition cannot be more strongly stated than in the following extracts from the learned work of Mr. Jarman, discussing the Victorian Wills Act:

"Examining the requirements common to the statute of frauds and the Wills Act in their order, the next condition prescribed for the validity of a will is that it should be signed, which suggests the inquiry, What amounts to a 'signing' by the testator? It has been decided that a mark is sufficient, and that notwithstanding the testator is able to write, and though his name does not appear on the face of the will. A mark being sufficient, of course the initials of the testator's name would also suffice. And it would be immaterial that he signed by a wrong or assumed name (since that name would be taken as a mark), or that against the mark was written a wrong name." (1 Jarman on Wills, 6th ed., *79.)

"The next statutory requisition, which is common to the old and the present law, is that the will be 'attested and subscribed' by the witnesses. A mark has been decided to be a sufficient subscription. . . . . The initials of the witnesses also amount to a sufficient subscription, if placed for their signature as attesting the execution. . . . . A witness need not sign his own name if the name actually subscribed be intended to represent his name; or a description (without any name) is sufficient if intended to identify him as a witness. . . . . In fact, there seems to be no distinction in these respects between the word 'sign' and 'subscribe'; any act, therefore, which, as before noticed, would be a good signature by a testator, would be a good signature by a witness." (1 Jarman on Wills, 6th ed., *85, *86.)

An examination of the cases bearing upon the interpretation of the English statute shows that the text of the learned author is fully supported.

The reasoning by which the conclusions are reached may be thus summarized:

To *subscribe* is to attest or give consent or evidence knowledge by underwriting, usually (but not necessarily) the name of the subscriber. But the place of the writing is immaterial, since a still more general meaning of the word " subscribe" is to attest by writing, in which definition the locality is wholly disregarded. This is the reasoning of the leading English case of *Roberts* v. *Phillips*, 4 El. & B. 450.

To *sign*, in the primary sense of the word, is to make any mark. To sign an instrument or document is to make any mark upon it in token of knowledge, approval, acceptance, or obligation. The *signature* is the sign thus made. And while, by long usage and custom, signature has come generally to mean the name of a person written by himself, and thus to be nearly an exact synonym of *autograph*, that signification is derivative, and is not inherent in the word itself any more than it is in *autograph*, which strictly conveys no more than the idea of a specimen of an individual's writing.

Any *mark* may be a signature, and that species of mark which we call a cross (independent of an accompanying name) was early used as a signature of assent, and indeed was designated *signum*. While marksmen have become fewer with the spread of education, the mark of the cross is still recognized by statute law as a method of signing.

Therefore, as the Wills Act required only a *signing* by the testator, and as this requirement of signing only was also found in the statute of frauds, the courts early decided not to be bound by any narrow definition of signing or signature as meaning the writing of one's name, but to give to the word its broadest possible scope and significance, and thus held that any mark or signature made with the intent to bind the maker (in the

case of the statute), or to be a sign (in the case of wills), should be deemed sufficient. As the English courts had still further obliterated from the word " subscription" the idea of place or locality, there was left no measurable distinction between the requirement upon the testator to sign and that upon the witness to subscribe. ·

In the decisions this broad rule is repeatedly asserted. In *Goods of Susanna Clarke*, 4 Jur., N. S., 243, the will of an illiterate person was executed by her mark, against which was written her maiden name, instead of that properly borne by her in marriage. Says the court: " There is enough to show that the will is really that of the person whose it proposes to be. Her mark at the foot or end of it is a sufficient execution, and what somebody else wrote against the mark cannot vitiate it."

In the *Goods of James Clark*, 2 Curt. 329, the testator had made his mark and requested the vicar to sign for him, which he did with his own name and not that of the deceased. Says the court: "The statute allows a will to be signed for the testator by another person, and *does not say that the signature must be in the testator's name.* Here this gentleman, at the testator's request, signed the will for him, not in the testator's name, but using his own name. I incline to think this is a sufficient compliance with the act."

In *Goods of Bryce*, 2 Curt. 325, the testatrix signed her will by a mark, her name nowhere appearing. Says the court: "Although the name of the testatrix does not appear upon the face of the instrument, the affidavit sufficiently accounts for the manner in which the will was signed. The statute does not say that *the name* of the testator shall appear at the foot of the will. The paper is identified as being the will of the deceased. . . . . I am of opinion that the statute is sufficiently complied with."

The foregoing cases deal with the " signing" by the testator. Coming to the subscribing by the witness, it is said in *Goods of Eynon*, 3 L. R. Pro. & D. 92: " No particular form of attestation is necessary, but the act

done by the witness must be intended by him to evidence his attestation of the will. I must find that I can draw an inference from what occurred that the witness *made a mark of some kind,* with the intention to evidence his attestation."

In *Goods of Christian,* 2 Rob. Ecc. 110, it is said: "The attesting witnesses to the so-called codicil have affixed their initials only; however, I have no doubt in the matter, although I believe this is the first instance under the act of the witnesses so signing. *I am not aware that the witnesses can be required to sign their names.* I am of opinion that there is a sufficient subscription on their parts, and, therefore, I decree probate as prayed."

In *Goods of Oliver,* 2 Spinks, 57, it is said: "The statute says the witnesses 'shall attest and subscribe the will.' *It does not say shall write their own names,* so that a mark is held to be a good subscription."

These cases are quoted that there may be no room for misunderstanding of the English decisions or of the text of the book writers. But, as the matter is wholly statutory, they have no value as authority, unless there be an identity in the statutory requirements of this state and England. But there is no such identity. Indeed, our statute seems to have been drawn with the express intent to foreclose and shut out the interpretation given to the English law. Thus, the English statute requires subscription. That word had been judicially declared not to have reference to the place of writing. Our statute says that the will shall be subscribed *at the end thereof,* thus expressly making locality of writing an element of the subscription.

The English statute required a signing. As interpreted by the court, this did not necessitate the signing of the name. By express language our statute commands that a witness shall sign *his name.* In England, therefore, a witness may sign in any one of a multitude of ways; by our law his signing is limited to the expression of his name.

The case of *Meehan* v. *Rourke,* 2 Bradf. 385, is in no

way opposed to, but rather is in full accord with, this view. The statute of New York, from which ours was taken, likewise requires that the witnesses should *sign their names.* Eliza Green, one of the witnesses to the will under consideration, was unable to write. Her name was correctly written by the doctor, and she then made her mark across it, and acknowledged it to be her mark and signature. The court said that before the revised statutes a witness might attest a will by a mark; as in this state it may be done under section 14 of the Civil Code. The opinion declares: "Our statute requires the witness to '*sign his name.*' . . . . Where another person writes the name of the witness and then the witness acknowledges the signature—puts his mark to it, his *signum*—he literally *signs;* and what he signs is his name, i. e., he signs his name, while a mark alone (the learned judge significantly adds) would not be sufficient." Yet a mark alone is held sufficient under the English statute.

I conclude, therefore, that as our law has seen fit to prescribe that the testator shall subscribe his will *at the end thereof,* so it has seen fit to require that attesting witnesses shall sign and shall sign only in one way, that is to say, by affixing their names. In construing a *statute* the duty of the court is simply to ascertain and declare what is in terms or in substance declared therein, not to insert what has been omitted, *or to omit what has been inserted.* (Code Civ. Proc., sec. 1858.) It cannot be said that some other mode of subscription will answer the purpose, or subserve the statutory requirement, when in truth it does not. As well could it be said that the requirement of two attesting witnesses is not mandatory, and that this will, having been duly attested by one witness, should be admitted to probate.

That the overthrowing of any will works a hardship upon the devisees and legatees is obvious; but the law is no more tender of their claims than it is of the rights of the natural heirs. When a will is proved every ex-

ertion of the court is directed to giving effect to the wishes of the testator therein expressed, but in the proving of the instrument the sole consideration before the court is whether or not the legislative mandates have been complied with.

The judgment and order appealed from are affirmed.

HARRISON, J., TEMPLE, J., and BEATTY, C. J., concurred.

McFARLAND, J., dissenting.—I dissent. In my opinion, there was in this case a sufficient compliance with the formalities prescribed by the code for the attestation of a will. It is true that the right to make testamentary disposition of property—like most other rights—rests upon the legislative will; but that legislative will has been uniformly exercised in favor of the right in all English speaking countries, and in nearly all others, from time immemorial, so that the right has come to be a usual, well-established, and most important attribute of ownership. Therefore, in dealing with an attempt to exercise that right the general rules of construction should be applied—that is, the provisions of the code " are to be liberally construed with a view to effect its objects." The signature of the witness Warren in this case, as shown beyond question, would be held good if any written instrument or paper known to the law were involved other than a will, and I see no good reason why the same rule should not apply here. To allow a will to be defeated by the careless (or intentional) misspelling of his name by a subscribing witness would lead, I fear, to great abuses. If a man should not have the right to make a will, let the legislature take it away; but as long as he has it let it be protected as other rights. I think that the judgment should be reversed.

GAROUTTE, J., dissenting.—I dissent. I do not think a man's testamentary disposition of his property should be defeated for the reasons here given. The argument requires a too technical analysis of terms and statutes

in order to arrive at such a result.   While the right to dispose of property by will is purely statutory, still it can hardly be said to be a mere matter of legislative grace, for it has become almost an inalienable right—made so by reason of its long practice and approval in all civilized nations.   It is conceded that if the testator, Walker, had made a like mistake, and signed his name Warren, it would not have defeated the will; but it is now held that the witness Warren having made the mistake in signing his name Walker, the will is avoided. I have no idea that the legislature, in formulating the statute as to the character of the signatures, ever intended such results to follow; and I am satisfied it never intended to attach any different meaning to the two phrases, namely, "sign his name as a witness," and "subscribed by the testator"; or that the legislature ever intended to bar a man from being a witness to a will, who was unable to sign his name, any more than it intended to bar a man from making his will, who was likewise so unfortunate.

For the purposes of this statute, the person's mark, properly witnessed, is his name; and any name that the party attaches to the will as a witness is his name.   It is not for a contestant of the will to say to a witness: " That is not your name"; and neither is it for the witness to appear upon the stand and say: " That is not my name." If we are to be so technical in this matter, the statute should have said " *true* name."   The true names of witnesses are often unknown to the testator, and to say that a person could intentionally and corruptly sign a false name to a will as a witness, and thereby defeat it, is to go to great lengths.   No case in the books has ever gone that far to my knowledge; still, that doctrine would seem to be declared by the main opinion of the court in the present case.   A name signed by mistake of the witness is no different from one signed in fraud.   The knave wrote the name as his name, and, for the purposes intended by the testator, it was his name.   In the present case the attorney, as a witness, unintentionally

wrote a name which was not his true name, but he intended the writing to be his name, and he made the writing for his name, and for the purposes intended by the testator; and, as to those purposes, it should be held to be his name. If, one hour previous to the signing of the will, he had concluded to change his name to C. G. Walker, and had so signed it, or, for the very purpose of concealing his true name, had signed the will "John Brown," to my mind the will would be legally witnessed, and in the present case the same conclusion should be declared.

VAN FLEET, J., dissenting.—I dissent from the conclusion reached by the majority of the court, and agree with what is said by Justices McFarland and Garoutte.

I think, by a too close adherence to the mere letter of the statute, the court, in the main opinion, loses sight of the evident purpose intended to be subserved by the provision in question. When the witness Warren, intending in perfect good faith, as is conceded, to write his own name, wrote his own initials, but inadvertently added the name of the testator, instead of his own, it was, to all essential intents and purposes, a signing of his name within the spirit and intent of the statute, since it met every purpose designed to be subserved thereby. And this view, in my judgment, is sustained by the case of *Meehan* v. *Rourke*, 2 Bradf. 385, cited in the main opinion. There the name of the witness was written by another, and merely *vised* by the mark of the witness himself, although the requirement of the statute, like our own, was, that the *witness* should sign *his name*. But it is said by the surrogate, in addition to the language quoted in the majority opinion: "I think the requisition of the statute sufficiently complied with by the name of the witness being written at the end of the will, and the witness putting his mark thereto. This construction meets the design of the legislature in having the name of the witness, *and, excluding wills attested only by marks*, and does not shut

out the attestation of wills by illiterate persons, when a penman can be found to record the transaction. I should come to any other conclusion with regret, as otherwise I should be compelled very frequently to reject wills attested by marksmen, the experience of this office showing the mode of execution to be very common. But, aside from the consequences, I do not think the rule contended for justified by the language of the statute, or consistent with the distinction made between a witness *writing* his name when he has subscribed the testator's name, and being required, in all other cases only, to ' *sign* his name.' "

I think the record shows a sufficient compliance with the requirements of the statute, and that the deceased should not, by any such slight lapse as is here disclosed, be deprived of the right of testamentary disposition of his property.

Whatever may be our personal views as to the provisions of the law for the distribution of the property of intestates, whether they meet with our approval or otherwise, cannot affect our consideration here. The sole question is whether the testator, in endeavoring to avail himself of the privilege of the law to so dispose of his estate as to meet his own desires, has so far complied with the statute as to make his purpose effectual; and this, I think, he has done, and that the judgment of the lower court should be reversed.

Rehearing denied.

McFarland, J., Garoutte, J., and Van Fleet, J., dissented from the order denying the petition for rehearing.