## No. 15,368.

IRELAND, ATTORNEY GENERAL *v*. JACOBS, ADMINISTRATOR.
(163 P. [2d] 203)

Decided October 29, 1945.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. BURTON T. GOBBLE, Assistant, for plaintiff in error.

Mr. FOSTER CLINE, for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

A SUIT by the Attorney General, to enforce what that distinguished public official conceived to be a public trust. The underlying basis of the claim is a will (presently to be set forth), joint in form, and purportedly executed by Frederick J. Leibold and Bertha M. Leibold, husband and wife, and in which each devised and bequeathed to the other their respective estates. In addition thereto, proceeding by paragraph seventh thereof, divided into subparagraphs (a), (b), (c), (d), (e), and (f), the parties created a trust, declared the purposes thereof, designated the beneficiaries, and appointed a trustee to administer it. It is provided that, for the purposes set forth in the said subparagraphs, and upon the death "of the one last surviving that the remainder of the entire estate, we give, devise and bequeath in trust," to the International Trust Company of Denver. Hereafter, for convenience, we shall refer to the Leibolds as Frederick and Bertha. The will is as follows:

"Joint Will and Testament.

"Will & Trust.

"I, Frederick J. Leibold and Bertha M. Leibold, do hereby make, publish and declare this to be our Last Will and Testament, hereby revoking all former wills and codicils thereto by us at any time heretofore executed. We hereby jointly declare and direct as follows:

"First: That I, Frederick J. Leibold, desire that all of my just debts be paid.

"Second: That in the event of my death before that of my beloved wife, that I give, devise and bequeath my home and residence and the lots upon which the same is situated, known as No. 501 South Washington Street, Denver, Colo., together with all furniture and

furnishings therein which I own at the time of my death, together with any and all other real estate which I may own and wheresoever situated, together with all bonds and securities which I may possess, to my wife, Bertha M. Leibold.

"Third: I also give, devise and bequeath unto my wife, any automobiles which I may own at the time of my death.

"Fourth: I hereby designate and appoint my wife as the sole executor of my said Will and vest in her as such, full power of sale in respect to real and personal property, with like power and authority to make and execute all necessary deeds, conveyances and instruments of title.

"Fifth: That I, Bertha M. Leibold, in the event of my death prior to that of my husband, Frederick J. Leibold, that I give devise and bequeath all real estate I may possess at the time of my death together with all stocks, bonds, securities and all other personal property.

"Sixth: That I hereby designate and appoint my husband as the sole Executor of my said Will and vest in him as such, full power of sale in respect to real and personal property, with like power and authority to make and execute all necessary deeds, conveyances and instruments of title.

"Seventh: That we both jointly further declare and direct that in the event of both of our deaths or of the one last surviving that the remainder of the entire estate, we give, devise and bequeath in trust unto the trustees, to wit: The International Trust Company, a Colorado corporation, of Denver, Colorado, as Trustee.

"Said Trust Estate shall be held for the following uses and purposes.

"(a) The Trustees shall pay the sum of $200.00 to some good reliable person for the faithful and loving care of our dog "Peggy" a Boston Bull, for the devotion and affectionate companionship she gave to us during

our lives. This care to be bestowed upon her during the balance of her life.

"(b) Said Trustee shall receive said Trust Estate as herein provided, to manage, control, handle and deal with, sell, invest and from time to time reinvest. The said Trustees are authorized and empowered to continue to hold as the Trust Estate or a part thereof such property, stocks, bonds and securities as they receive from our estates, and shall not be required to sell and dispose of the same, or any part thereof, merely for the reason that such investments are not authorized trust investments. Said Trustees shall be fully protected in and hereby directed to continue to hold such investments as they receive from our estate for such length of time as good business judgment would seem to require.

"(c) That all property such as real estate and personal property shall be disposed of in a manner that will bring the best value and that they will have full power to use their judgment to secure such return. That the proceeds shall be invested only in such securities that are non-speculative and eligible for Trust Funds.

"(d) That this Trust shall be known as the Leibold Competitive Scholarship and is intended to be used to assist in financing a college education for any boy or girl who has been a resident of Denver for one (1) year and that has shown that they possess the necessary qualifications to excel in their studies and are not financially able to finance themselves. That this scholarship shall be awarded each year and shall be competitive. The trustees shall be empowered and have full authority to determine who shall be entitled to the award.

"(e) That the income from this trust shall be used for this purpose only and shall be paid out and dispensed to each successful contestant in such manner as the Trustees shall determine. That the principle [principal] shall at all times remain intact and that in the event that the income exceeds the scholarship for any one

year, that the excess shall be added to the principle [principal] Trust Estate.

"(f) It is our wish and we hereby direct that the Trustees handling this Estate to make investments only in Government Bonds, Municipal Bonds, School District Bonds and in that class of securities authorized by law of Colorado for the investment of Trust Funds.

"In Witness Whereof. We have hereunto set our hands and seals this first day of June, A. D. 1931.

"Frederick J. Leibold.
"Bertha M. Leibold.

"Signed, sealed, published and declared by the Testators, as and for their Last Will and Testament, and in the presence of us, who, at their request, in their presence and in the presence of such [sic] other have subscribed our names as attesting witnesses thereto; and we further state that at the time of the execution of said instrument we believe the said testators to be of sound and disposing mind and memory and under no restraint.

"John Herr,
3417 West 38th Ave.,
Denver, Colo.

"Ernest Urbach,
1280 So. Ogden St.,
Denver, Colo."

Frederick departed this life November 29, 1935, and in due course the will in question was admitted to probate as his last will and testament. Bertha qualified as executrix of the estate, administered it, and on its closing received the entire assets thereof. On the death of Bertha, March 11, 1942, the same will again was offered for probate, but probate was denied because of lack of statutory proof that she had executed it as her last will and testament. On the theory that Bertha had died intestate her estate was administered by defendant in error

as administrator, and the over-all question is whether he shall make distribution of the net estate to Bertha's heirs, as he contends is his duty, or pay it to the trustee named in the will, as the Attorney General insists should be his course. From the evidence received, it reasonably appears that Bertha's signature is on the purported will in the appropriate place therefor, im-. mediately following that of Frederick, but it further appears from the testimony of the only living subscribing witness to the will, that she did not sign it in his presence, nor was she present at all when, at the request of Frederick, he and the other subscribing witness signed it. Furthermore, the testifying subscribing witness did not recall that Bertha's signature was on the will when he signed it, nor would he know her signature. That she did not execute the will in the required form, as the trial court here found, and unmistakably appears, is consistent with the order of the county court when probate of the will was denied by that tribunal.

Frederick, having made a valid will containing the trust clause, and Bertha having signed the same will containing the same clause, Did she, notwithstanding her intestacy, make a valid agreement with Frederick, enforceable in equity? The trial court thought not. The circumstances surrounding the execution of the will, since it purported to be a joint one, are extraordinary. Frederick appeared in an office without his wife, the office of a long-time business associate, the testifying subscribing witness Herr, and, producing the will, said: "John and Ernest, here is my will. I wish you would witness it." That was all he said. Thereupon the two witnesses signed. Upon the second attempted probate, and perhaps, for all that is disclosed by the record, at the original probate proceedings, the name of Bertha appeared signed to the will. There was testimony from the witness Herr that he did not recall if her name was signed when he witnessed the will; thus, the circumstances as to when she signed are unknown. Having

made no will, Did she make a contract? And if so, when and where? Was there any consideration? There was none named in the contract. This being true can it be said that one party to a contract is bound and the other is not? Without the testimony of the witness Herr, the will, judging from its wording, contains consideration. The husband said, in effect, "I will leave everything I have to you if you will leave all you have to me." She, in effect, said the same to him. They apparently agreed further that after the death of both the trust was to go into effect. There seemingly was a meeting of the minds; a contract was made.

■■ That Frederick should precede in death, was not foreseeable; but assuming that Bertha had been called first, What then? Had she died first, and had Herr's testimony been the same, which we must assume, the will as hers, would have been denied probate. Frederick would then have taken as provided by statute and the agreement in the will would have failed for lack of consideration. To hold this contract valid, to hold that there was mutual consideration, it would be necessary for the trial court, or this court, to read into the will words that are lacking; to write into the will that Frederick's death prior to Bertha's was preordained. Even such far-fetched reasoning upon our part would be futile in the end, for while courts must interpret a will as best they can, they are powerless to draft and execute a will out of the whole cloth. If Bertha left no will there is nothing before us to interpret. Frederick's administrators would not have been bound by the will because there was none, and there being no promise for a promise the trust would fail. We think it is the law now everywhere that nominal consideration for almost any contract is sufficient. But we know of no law, anywhere, that a valid contract requires no consideration.

■■ Plaintiff calls our attention to the following cases decided in this jurisdiction: *Wehrle v. Pickering,* 106 Colo. 134, 138, 139, 102 P. (2d) 737; *Williams v. Pol-*

*lard,* 101 Colo. 262, 268, 72 P. (2d) 476; *Hildebrand v. Rolf,* 100 Colo. 304, 308, 309, 67 P. (2d) 492; *Brown v. Johanson,* 69 Colo. 400, 402, 404, 194 Pac. 943. In the Wehrle case, Mr. and Mrs. Lawrence agreed to, and did, execute reciprocal wills. Since in that case there was a valid promise for a promise, the survivor was bound by all the equities to perform specifically. The distinction between the Wehrle case and the instant one is the fact that Mr. and Mrs. Lawrence each made a will; in other words, Mrs. Lawrence did, and Bertha here did not, make a will. The same state of facts is found in the Williams case, where mutual wills were made. Again our reasoning therein was based upon valid wills. As we said in the Wehrle case: "We find no occasion to further examine those rulings because, in our opinion, the record as it stands leads to the inescapable conclusion that Mr. and Mrs. Lawrence entered into an agreement to execute mutual and irrevocable wills with the understanding that on the death of either the other was bound, and that record permits no contrary inference. Any other conclusion puts upon their conduct the stamp of improbability and absurdity. What reasons one or both urged for the disposition made we know not, but many good ones are conceivable. We know only that such disposition was lawful, that the execution of either will was a sufficient consideration for the execution of the other, and that a testator may make such disposition of his estate as he pleases, provided only that it be not forbidden by statute."

It is clear that there we were considering wills that concededly were such. There was no question as to the validity of either. We spoke there of irrevocable wills. Frederick may have intended his will to be irrevocable, but from all the facts produced at trial, considered in the light of the briefs, it was not irrevocable. Having particularly in mind his, and possibly his witnesses', somewhat peculiar notions of the signing and witnessing of a joint will, and proceeding the next day, or at

his pleasure, he could have made a different "joint will," or, quite as simply, he could have destroyed the joint will and drafted and signed an individual will.

In the Hildebrand case, two brothers made reciprocal wills. Our holding there that by the execution of the reciprocal wills the property willed became impressed with a constructive trust, was predicated on the fact that the will of each of the brothers was valid. No case has been cited to us where the wills of both testators, or the will of one of them, was questioned. In the last case cited, Brown against Johanson, Mr. Justice Burke states the law in Colorado, and cites decisions to the same effect from other states, saying: "That there exists ample authority for the finding of the trial court that the wills here under consideration were mutual and reciprocal, that they should be construed together, that so construed they constituted a contract between husband and wife, that the execution of one was the consideration for the execution of the other, and that after the death of the husband, the probate of his will and the distribution of his estate thereunder, the wife could not violate that contract by a revocation of her will seems to us beyond question. We are equally satisfied that such a construction and interpretation is compatible with justice and equity, and that the findings are supported by the evidence and are correct."

Justice Burke's language is explicit, for it will be noted that he says, "the execution of one was the consideration for the execution of the other." Here, only Frederick executed a will. Whatever may have been in the minds of Frederick and Bertha, neither the instrument under consideration nor the evidence otherwise, makes revelation.

All the cases cited, and which we have reviewed, are based upon the premise that both contracting parties executed wills, wills incapable of being set aside. In his brief, the Attorney General contends that there was "mutual consideration"; that although the document was

refused probate as the last will and testament of Bertha, still it is evidence of an agreement, and is an agreement, under which Frederick gave all his property to Bertha to be hers during her lifetime (he actually gave her full dominion over it), in consideration of her promise to leave the remainder of his property and hers to the trustee to be used for the purpose of the trust as set forth in the will. His theory is, that a promise for a promise is consideration. True, but the difficulty there is, that Frederick made no promise by which he was bound, even if Bertha thought she did. There is no evidence that he was secretive by design, but there is convincing evidence that he executed the will, "my will," as he called it, in her absence. He could at any time, and again in secret, have executed another will with different terms and without the trust clause. It is and always has been his will and his alone. Any promise he may have made was not mutual or binding upon him and is therefore no legal promise at all. There is undisputed evidence that Bertha's signature appears upon the will and in its proper place. If we were inclined to hold the trust valid, while holding the will otherwise invalid, we would require some evidence at least, that she signed the will prior to the death of Frederick. This would go beyond the doctrine in the Wehrle case wherein Mr. and Mrs. Lawrence " * * * entered into an agreement to execute mutual and irrevocable wills * * * ". It is one thing to construe an undisputed will, it is quite another to theorize a priori.

*Twilley v. Durkee*, 72 Colo. 444, 211 Pac. 668, is enlightening. "No * * * opportunity," we said there, "should be afforded to interested parties to foist upon a court a defectively executed will, and the temptation for them to act in accordance with their own interests is too great to permit of a relaxation of the inflexible rules relating to execution of wills.

"Another answer to the contention is that, where there is a defective execution of a will, the defect at-

taches to the entire instrument. A will, so far as execution goes, is an entirety. If defective because not executed in accordance with the requirements of the law, it is void for all purposes. The rule sometimes enforced that the courts will endeavor to reconcile apparently conflicting parts of a will, does not apply to a failure to comply with the law as to execution. This will was not entitled to probate because it was a void will, not being executed according to the requirements of the statute. 'A will must be executed in accordance with the statutory requirements; otherwise it is entirely void.' 40 Cyc. 1097; *Doran v. Mullen,* 78 Ill. 342; *In Re Walker,* 110 Cal. 387, 390, 42 Pac. 815, 30 L.R.A. 460, 52 Am. St. Rep. 104.

"In the Walker case it is said: 'It is not for courts to say that these requirements, or any of them, are mere formalities which may be waived without impairing the status of the instrument.' *In Re Noyes' Estate,* 40 Mont. 178, 105 Pac. 1013, * * * is a collection of numerous authorities. They are to the effect that when a will is not executed in accordance with the requirements of the law, it is not entitled to probate, and the courts will not hold the will valid for one purpose and invalid for another. As to the execution, the will is an entirety, and no attempt will be made by the courts in their effort to give expression to the will of the testator, to hold the will valid as to one, and invalid as to another, of its purposes."

In the Twilley case, it seems important to note, the court was divided, the majority holding that there had been a defect in the execution of the will, while the three dissenting justices were of opinion there was no defect in its execution. Here, however, as to Bertha's "will," and that is the Attorney General's reliance, we are not concerned with defects in execution; we are faced with nonexecution. For purposes of this inquiry, we are confined to half the will, to half the contract, to Frederick's half. That is not sufficient. In short, to re-

emphasize, Bertha did not execute the will in question, nor, to quote from the summation of the distinguished trial jurist, was there "evidence here whatsoever of any agreement between Frederick J. Leibold and Bertha M. Leibold to make and execute mutual wills leaving their property to each other or creating a trust upon the death of the survivor of both of them. The court * * * has no right," the trial judge continued, "to read into the will something that is not there, or to surmise from the bequest provisions of the will that there ever was, prior to the execution of it by Mr. Leibold, any agreement between the parties" in relation to the matter.

We share the view of the Attorney General that the proposed trust was not only commendable, but that it partook of the nature of a public trust, concerning which properly he was moved to action. Failure of proof worked its undoing.

Let the judgment be affirmed.