265 P.2d 691 (1954)
In re McLAUGHLIN'S WILL.
REED et al. by KIRGIS
v.
McLAUGHLIN et al.
No. 17115.
Supreme Court of Colorado, en Banc.
January 11, 1954.
Rehearing Denied February 1, 1954.
Gorsuch & Kirgis, Fred A. Deering, Jr., Denver, for plaintiffs in error, Joanne Reed and James Reed appearing by their duly appointed and qualified guardian ad litem Frederic L. Kirgis.
Holme, Roberts, More, Owen & Keegan, Peter H. Holme, Jr., Ted P. Stockmar, Denver, for defendant in error, University of Texas and School of Medicine University of Texas.
Jean S. Breitenstein, Denver, for defendants in error, Stuart W. McLaughlin as Administrator with the Will Annexed, Stuart W. McLaughlin, Individually, Evlyn M. Levison, and A. C. McLaughlin, Jr.
David J. McKee, Denver, for defendant in error, Frances McLaughlin Adcock.
John Ben Shepperd, Atty. Gen. of Texas, and C. K. Richards, Asst. Atty. Gen., of Texas, of counsel, for University of Texas and another.
MOORE, Justice.
Plaintiffs in error filed their caveat in the trial court objecting to the probate of an instrument offered as the last will and testament of A. C. McLaughlin, deceased. As heirs at law they would be entitled to a onefourth interest in the property involved if the will were rejected. Defendants in error are the other heirs at law, who do not object to probate of said will, and the two beneficiaries thereunder, all of whom seek to uphold said document as the valid will of said *692 testator. The trial court upheld the will and the parties appear in this court in the same order as in the trial court. We will hereinafter refer to them as caveators and respondents, or by name.
All the pertinent facts either are expressly stipulated by all parties, or stand undisputed in the record. A. C. McLaughlin, the testator, was born in 1876 and lived during his childhood in Austin, Texas. His father, Dr. James W. McLaughlin, for many years was a professor in the University of Texas School of Medicine, and also served as Regent of that University. In 1907 Mr. McLaughlin became a resident of California where he remained until his death January 6, 1952. In addition to the persons hereinabove named as heirs at law, McLaughlin had a sister, Frances McLaughlin Adcock, who survived him and appears here as a beneficiary under the will and one of the defendants in error.
December 7, 1951, McLaughlin wrote a will, as follows:
"I, A. C. McLaughlin, residing at 472 Prospect Square, in the City of Pasadena, State of California, declare this to be my last will and testament. I bequeath to my sister, Frances McLaughlin Adcock, an interest in my royalties and working interests in oil lands in the Rangely Oil Field in Colorado sufficient to yield Twelve Thousand Dollars ($12,000) per year during her life.
"My children, A. C. McLaughlin, Jr., Evylin Levison McLaughlin and Stuart McLaughlin, have been provided for and therefore I make no provision for them except that I bequeath to them, share and share alike, the contents of my home in Pasadena.
"I bequeath all other property of which I die possessed to the School of Medicine University of Texas to establish and maintain fellowships to be known as the James W. McLaughlin Fellowships for the investigation of infection and immunity.
"Dated at Pasadena California this seventh day of December 1951.
 "A. C. McLaughlin."
This unwitnessed will, all of which was in the handwriting of the testator and signed by him, was valid under the laws of California. It was duly admitted to probate in that state without objection on the part of anyone.
During his lifetime testator was engaged in an oil and gas business and acquired properties located in Rio Blanco county, Colorado, which have become of great value, and which are the subject matter of the present litigation.
February 15, 1952, pursuant to the provisions of the Colorado statute pertaining to the probate of foreign wills, the above quoted instrument was admitted to probate by the Rio Blanco county court, and Stuart W. McLaughlin was appointed Colorado administrator. The three surviving adult children of testator have consented to, and have taken a position in support of, the will and the carrying out of its terms, subject only to nonwaiver of their rights as heirs at law in the event of a holding of intestacy.
The two children of testator's deceased daughter, Mrs. Reed, did not consent and were legally incapable of so doing. On March 26, 1952, pursuant to appropriate proceedings in the Rio Blanco county court, Frederic L. Kirgis applied for and obtained an order appointing himself as guardian ad litem for the two Reed children. Mr. Kirgis thereafter filed in behalf of the minors a caveat to the will, challenging it upon various grounds, some of which have since been removed from issue by stipulation and agreement. It is agreed that Mr. Kirgis, and the caveators represented by him, made a timely filing of their caveat, and had not received earlier notice of the Colorado probate.
Of the grounds alleged in the caveat, those which still are pertinent are as follows:
1. Caveators contend that: The will, because it is holographic and unwitnessed, though validly executed in California, is voidable in Colorado as to Colorado real estate, despite the provisions of Colorado's foreign will statute. (Chapter 176, § 62, '35 C.S.A., as amended.)
*693 2. Caveators contend that: The gift in the will to Mrs. Adcock (testator's surviving sister) is void for vagueness, ambiguity, uncertainty and impossibility of administration.
3. Caveators contend that: The gift in the will to the University of Texas is likewise void for the following reasons:
(a) Because of uncertainty of the Adcock gift and consequent uncertainty as to the quantum of the residue devised to the University of Texas;
(b) Because the "School of Medicine University of Texas" is not a legal entity capable of taking a gift.
Caveators argue that in so far as the property in Colorado is concerned the said will is inoperative. They contend for a total, or in the alternative a partial, intestacy and claim an undivided one-fourth interest in any properties held to be intestate.

Questions to be Determined.
First: Where a nonresident of Colorado drafts and executes a holographic will in the state of his residence, in which such wills are valid; where said will is admitted to probate in said state and thereafter is offered for probate in ancillary proceedings in the county court of Colorado for the county in which testator owned real estate; and where objection is made to the probate of said will in Colorado on the ground that it was not executed in compliance with the formal requirements of the laws of Colorado; is said will entitled to probate, and will it pass title to real estate in Colorado under our statute governing the treatment of foreign wills?
This question is answered in the affirmative. The will in question, if executed by a resident of the State of Colorado, would be without legal force or effect under the provisions of section 39, chapter 176, '35 C.S. A., which requires the attestation of two or more credible witnesses to a testamentary disposition of property. With reference to wills made by residents of the state, the provisions of this section are mandatory. Ireland v. Jacobs, 114 Colo. 168, 163 P.2d 203, 161 A.L.R. 1413. It is admitted that the will in question is valid in California and effectively passes title to all property, real and personal, located within that state. Caveators assert that in order to pass title to real property, and interests therein, which is located in Colorado, as against a direct attack by caveat, the will must comply with the requirement of the Colorado statute regardless of the domicile of the testator or the place of execution of the will.
At common law, the validity and construction, as well as the force and effect, of a will affecting the title to real estate, or interest therein, depend upon the law of the state where the real property is situated, irrespective of the law of the domicile of the testator or of the place where the will is executed. 15 C.J.S., Conflict of Laws, § 19, p. 941; 11 Am.Jur., p. 479. It is the contention of respondents that pertinent provisions of Colorado statutes have altered the common law rule.
Section 39, and sections 62, 63 and 65, chapter 176, '35 C.S.A., are the statutory provisions which are involved. Section 39 provides that a will must be in writing, signed or acknowledged by the testator in the presence of two witnesses, and declared by him to be his last will and testament.
Amended section 62(a) (S.L. '47, c. 341, § 4) provides:
"As used in this section the word `foreign will' mean an instrument in writing which has been or shall be admitted to probate as the last will, testament or codicil of a decedent before any court or tribunal other than a court of this State, such court or tribunal being authorized by the laws of such jurisdiction to admit the same to probate, whether or not such instrument was executed in accordance with Section 39 of this chapter.'
This section applies specifically to the precise situation in the case at bar. Mr. McLaughlin's will is a "foreign will" as therein defined, because it is (a) "an instrument in writing", (b) "which has been * * * admitted to probate as the last will * * [of Mr. McLaughlin]," (c) before a "court * * * other than a court of this state," (d) which court was "authorized by the laws of such jurisdiction to admit the same *694 to probate," and (e) which will was not "executed in accordance with Section 39 of this chapter." The most significant feature of the 1947 amendment is the following language which never before appeared in any of the versions of the Colorado Foreign Will Statutes:
"whether or not such instrument was executed in accordance with Section 39 of this chapter."
The provisions of amended section 62, which follow the above quoted statute, set forth procedures for probating such a will in Colorado.
Section 63, chapter 176, '35 C.S.A., deals with the subject of will contests and generally provides for the filing of caveats or objections to instruments offered for probate as the last will and testament of a deceased person. We held in Foster v. Kragh, 107 Colo. 389, 113 P.2d 666, that a foreign will which affects real estate in Colorado, and which is offered for probate in the county where such real estate is located, is subject to attack by caveat, notwithstanding the fact that it has been admitted to probate in another state. That case was decided prior to the 1947 amendment to section 62, and is reaffirmed in so far as a caveat is based upon objections of substance as distinguished from those pertaining to observance of formalities in the execution of a foreign will.
Amended section 65, chapter 176, '35 C.S.A. (S.L. '47, c. 341, § 5), deals with the effect of probate orders and fixes a limitation upon the right of persons to question the finality of proceedings resulting in the admission or denial of a foreign will to probate in this state. It is applicable to the case at bar only because the caveators had no notice of the initial proceedings in Colorado and instituted this action within the limitation period. No controversy arises over any construction to be given this section of the statute.
The basic contention of caveators upon the point under discussion is that, although the will could be admitted to probate in Colorado even though it does not comply with section 39, nevertheless upon the filing of a caveat challenging the formalities of execution, section 39 becomes applicable, and, if there is not a compliance with the provisions thereof, the admission to probate in Colorado must be set aside. Counsel for caveators make the following assertions:
"It is clear that Section 62 permits the admission to probate in Colorado of a foreign will, which has been or shall be admitted to probate elsewhere, whether or not such will complies with the formalities of Section 39, Chapter 176, so long as the will is not challenged in a direct attack by caveat. * * * It is submitted that the only effect of such an order when Colorado real property is involved is to establish the validity of the will and transfer the title of such property against collateral attack.

* * * * * *
"We respectfully submit, however, that Section 62 does not abrogate the necessity for compliance with the statutory formalities of execution as set out in Section 39, Chapter 176, C.S.A. (1935) when the question is raised by caveat in due time. Section 62 leaves wholly untouched the fixed and sovereign doctrine that the formal and essential validity of a foreign will which attempts to devise real property located in Colorado must be determined exclusively by reference to the laws of this state, when the operative effect of such a will is directly contested by caveat."
Careful analysis of the above mentioned statutes clearly shows an intent on the part of the legislature to treat a foreign will, as defined in amended section 62(a), as a validly executed will in Colorado. If, as admitted by counsel for caveators, this statute gives validity to the will in the absence of objection to the formality of execution thereof, the mere filing of a caveat cannot logically be held to destroy the force and effect of the statute. Amended section 62(a) does not expressly so provide, and every logical inference in the complete section points to a contrary conclusion. For example, in amended section 62(b) it is provided that a copy of a foreign will with appropriate accompanying documents showing probate in the foreign jurisdiction, on presentation to the county court in Colorado, gives the *695 county court the right to inquire into only one issue. This issue is, "Whether the decedent was, or was not, a resident of this State". If the court, "finds that the decedent was not a resident of this State the court shall * * * by order admit such foreign will to probate without further proof of the execution thereof." (Emphasis supplied.)
Our conclusion upon this question is in harmony with the trend of the recent decisions from other jurisdictions, as evidenced by the opinion of the Supreme Court of Iowa in the case of Widney v. Hess, 242 Iowa 342, 45 N.W.2d 233. In that case the identical argument, which is presented in the instant case by counsel for caveators, was advanced and it was rejected. While the Iowa statute, I.C.A. § 633.49, under which the question arose is not identical to our own, the objects sought to be attained by them are the same.
Second: Is the devise to Frances McLaughlin Adcock void because of ambiguity, uncertainty and impossibility of administration?
This question is answered in the negative. The trial court in its findings and conclusions of law upon this subject, said, in part:
"The gift in testator's Will to Frances McLaughlin Adcock is not, as alleged in Paragraph 14 of the caveat, so `vague, uncertain and impossible of administration' as to be void. It is the conclusion of this Court that the testator's intention is clear in identification of Mrs. Adcock as the intended beneficiary, in designation of the amount she is to receive, to-wit: $12,000 per year for her life, and in the designation of the property out of which this payment is to be made, and the Court concludes that Mrs. Adcock is entitled to receive during her lifetime $12,000 in income each year out of the net income which has accrued from all the properties listed in the inventory (except the bank accounts) from the date of the testator's death up to the time of making each such annual payment."
The court decreed that after payment of expenses of administration and all taxes payable out of the estate, the residue thereof "shall be distributed to the University of Texas subject to the burden of an interest in the properties listed in the Inventory (except the bank accounts) in the nature of a payment of $12,000.00 per year to Frances McLaughlin Adcock from and after the date of the testator's death and for the duration of her life, such payments to be made annually out of the net production accrued therefrom from the date of the testator's death to the date of each annual payment."
We hold that the findings and decree of the trial court are fully justified and that the law applicable to the facts was correctly applied. In support of this statement we direct attention to some pertinent language of our court in other cases involving the construction of wills. In Chilcott v. Hart, 23 Colo. 40, 45 P. 391, 394, 35 L.R.A. 41, we find the following:
"In very few cases are wills so defective and confused as to be incapable of being brought into harmony and intelligible meaning by fair and allowable construction within the ordinary range of judicial administration; and it is clearly the duty of courts to uphold every contract, and especially every instrument of a testamentary character, where the thing can fairly be done; and it is little creditable to courts to evade just responsibility in such cases by shielding themselves behind some antiquated case, which might seem to justify a decision against its validity on the ground of uncertainty, when, at the same time, every member of the court is convinced, from the words of the will, what the testator must have intended, and that he could have meant nothing else."
In Re Estate of Paulsen, 113 Colo. 373, 158 P.2d 186, 189, we find the following:
"There are certain well recognized and general principles to be followed in construing wills, all of which may be summarized as the ascertainment of the testator's intention as expressed in the will when it is considered in the light of surrounding circumstances and in view of admissible evidence. * * *
*696 "`Courts will even change or mould the language of a will in construction, so as to carry out what appears from reading the whole will that the testator actually intended.'" Schouler on Wills and Administration, p. 233, §§ 475, 476, 477.
Third: Is the devise to "the School of Medicine University of Texas" void because the beneficiary named is not a legal entity capable of receiving a gift?
This question is answered in the negative. Counsel for caveators argue that the beneficiary named in the residuary clause of the will does not sufficiently describe a legal entity capable of taking title to the property covered thereby. We find no merit in this argument and are content to direct attention to the opinions of our court in the following cases in which similar arguments under comparable factual situations have been held insufficient to void a devise of property. Galiger v. Armstrong, 114 Colo. 397, 165 P.2d 1019; In re Estate of Schleier, 91 Colo. 172, 13 P.2d 273.
The University of Texas is a legal entity for which the Constitution, Vernon's Ann. St., of the State of Texas, Article VII, § 10 thereof, provides as follows:
"The Legislature shall as soon as practicable establish, organize and provide for the maintenance, support and direction of a university of the first class, to be located by a vote of the people of this State, and styled, `The University of Texas', for the promotion of literature, and the arts and sciences, including an Agricultural, and Mechanical department."
The Supreme Court of Texas has indentified the School of Medicine with the University of Texas in Foley v. Benedict, 122 Tex. 193, 55 S.W.2d 805, 806, 86 A.L.R. 477, from which we quote:
"The School of Medicine at Galveston is a school in and is a part of the University of Texas and is under the control and management of the board of regents of the University of Texas."
The conclusions we have reached on the questions hereinabove stated make it unnecessary to consider other arguments of counsel, since all of them are founded upon the premise that one of the foregoing questions would be answered in a different manner.
The judgment is affirmed.
CLARK, J., not participating.