No. 14,545.

WEHRLE ET AL. *v.* PICKERING ET AL.

(102 P. [2d] 737)

Decided April 15, 1940.   Rehearing denied May 20, 1940.

Mr. E. N. FREEMAN, Mr. HORACE N. HAWKINS, for plaintiffs in error.

Mr. FRED S. CALDWELL, Mr. WILBUR F. DENIOUS, Mr. HUDSON MOORE, for defendants in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFFS in error are hereinafter referred to as Merle, Doris, George, Robert, and Ronald respectively; defendants in error as Ralph, Clyde, Frank, Orley, Lillie,

Stella, and the administrator, respectively; and Eva M. Lawrence, deceased, and George W. Lawrence, deceased, as Mr. and Mrs. Lawrence, respectively. The question here presented is, Did Mr. and Mrs. Lawrence agree to execute, and execute, reciprocal and irrevocable wills, which agreement the law will, under the admitted facts, enforce?

Mr. and Mrs. Lawrence were married in 1909 and lived until death in Grand county, Colorado. Mrs. Lawrence had previously been married to one Becker. They had two children, Stella and Lillie. At the time of their separation the former was about 17 years of age, the latter six. Stella thereafter married Oscar Pickering, and in due time Lillie married his brother George. She finally divorced George and married one Armbrust. Mr. and Mrs. Lawrence had no children, and no relatives of Mr. Lawrence have appeared. The approximate ages of certain of the parties (on March 10, 1938, the date of the trial) here follow their names. Merle (24), Doris (22), George (20), and Robert (10), are children of Lillie, and Ronald (6), son of Merle, is her grandchild; Ralph (34), Clyde (36), Frank (34), and Orley (23), are the sons of Stella. (No explanation appears of the identity of the ages of Ralph and Frank, but such is the record.)

Mr. Lawrence died July 22, 1935. About four months later Mrs. Lawrence was adjudged a mental incompetent and died July 28, 1936. From their marriage until the former's death they resided together as husband and wife. No will of Mrs. Lawrence has been found. October 24, 1933, Mr. Lawrence executed a will which gave all his property to his wife, if living, if not, then $100 each to Stella, Ralph, Clyde, Frank, and Orley, one-third of the remainder to Lillie, and the other two-thirds to George, Merle, Doris, Robert, and Ronald, equally. It named Mrs. Lawrence, if living, as executrix, otherwise Lillie, both without bond. Probate was had on the sworn petition of Mrs. Lawrence and she was duly ap-

pointed executrix, took charge of her husband's estate, and continued to act until disqualified as above. This was done on the petition of Stella and Lillie, and they were appointed conservators and administratrices de bonis non, c. t. a. of the estate of Mr. Lawrence. The latter was closed and its assets distributed to the estate of Mrs. Lawrence, and Stella and Lille were authorized by the court to transfer to themselves as administratrices of the estate of Mrs. Lawrence all property in their hands in other representative capacities, now estimated at approximately $51,000.00. On petition of Stella a decree was entered finding her and Lillie sole heirs at law of their mother. The present action was begun about thirty days prior to the death of Mrs. Lawrence. Because of it the court later removed Stella and Lillie as administratrices of their mother's estate and appointed the present administrator. An agreement of counsel and an order of court have stayed distribution until final decision here.

The complaint in this cause alleges that Mr. and Mrs. Lawrence, pursuant to agreement, executed mutual and irrevocable wills, and that after the probate of the husband's the wife destroyed hers. It is asserted that the will of Mrs. Lawrence was identical with that of her husband, i. e., that it gave all her property to Mr. Lawrence, if living, otherwise directed that it be divided exactly as provided in his will; that it named him as executor, if living; if not, Lillie, both without bond.

Having declined to appear as plaintiffs Ralph, Clyde, Frank and Orley were made defendants, and filed disclaimers. The administrator answered admitting formal allegations and denying others for want of information. Default was entered against Lillie. Stella demurred for misjoinder of causes and parties, ambiguity, and want of facts. Her demurrer was overruled and she answered admitting formal allegations and denying others, particularly the agreement to make mutual and irrevocable wills, and execution of a will by Mrs. Lawrence.

Trial was to the court. All material evidence was adduced by plaintiffs. It contains no important conflicts and the result, for all practical purposes, was submission on an agreed statement of facts. The court found generally for defendants, and specifically that if certain excluded offers of proof had been admitted the ruling would have been the same. Judgment was entered accordingly, and to review that judgment this writ is prosecuted. The assignments raise the questions of the correctness of said rulings on evidence and the correctness of the findings on the facts. Counsel for defendants in error insist that the assignments are insufficient. On that point we think nothing more necessary than to say that we find them ample.

One Spangler, a lawyer, testified on the trial. He knew Mr. and Mrs. Lawrence well and while a visitor at their ranch the latter told him that she and her husband had decided how their wills should be drawn and that Mr. Lawrence would see him and have it attended to. At a later visit, early in July, 1933, she repeated this, in substance. October 24, following, Mr. Lawrence came to Spangler's Denver office and employed him to draw the wills in conformity to a memorandum which he presented in the handwriting of Mrs. Lawrence. They were so drawn and their provisions were as alleged, supra. Mr. Lawrence duly executed his and took that of Mrs. Lawrence with Spangler's written instructions for its execution. That Mrs. Lawrence executed a will is evidenced by the testimony of the two witnesses thereto. One gave the date as "in the fall of 1933," the other as "around the first of November, 1934," but we think the whole of their testimony, in the light of admitted facts, leaves no doubt that they were speaking of the same will and the same date and that this was in October, very soon after the return of Mr. Lawrence from the office of Spangler. The following year, while Spangler was again visiting at the ranch, Mrs. Lawrence, in her husband's presence, told him that his directions had

been followed and the will executed. On the death of Mr. Lawrence his wife employed Spangler to settle the estate. They went to the bank together to get the will. There with it was the will of Mrs. Lawrence which Spangler examined to see that it was properly witnessed. An October date had been filled in and Mrs. Lawrence admitted her signature thereto. In September, 1935, Mrs. Lawrence went with her daughter-in-law to the bank for the avowed purpose of securing and destroying her will. She told the banker that she wished to get her will and she took a paper purporting to be such from the safety deposit box and suggested going to the home of the witness that she might destroy it. They went accordingly and there she burned a paper which she told the witness was her will.

This much of the evidence we detail only to present the general picture. It is supported by the remainder and greatly reinforced by that tendered and rejected. Some of this was admissible, some not. We find no occasion to further examine those rulings because, in our opinion, the record as it stands leads to the inescapable conclusion that Mr. and Mrs. Lawrence entered into an agreement to execute mutual and irrevocable wills with the understanding that on the death of either the other was bound, and that record permits no contrary inference. Any other conclusion puts upon their conduct the stamp of improbability and absurdity. What reasons one or both urged for the disposition made we know not, but many good ones are conceivable. We know only that such disposition was lawful, that the execution of either will was a sufficient consideration for the execution of the other, and that a testator may make such disposition of his estate as he pleases, provided only that it be not forbidden by statute. Counsel for defendants say evidence of such contracts must be "strong and unequivocal," citing *Walker v. Drogmund,* 101 Colo. 521, 74 P. (2d) 1235. We think that before us meets the requirement. To the same effect they cite

*Fagan v. Fisher,* 74 Colo. 473, 222 Pac. 647. That case emphasizes the necessity of part performance. Here Mr. Lawrence fully performed. It is urged that mere identity of date and similarity of terms are only "some evidence" of irrevocability. *Gray v. Perpetual Trustee Co.,* 40 Comm. L. R. (Australia) 558, 60 A. L. R. 613; *Beveridge v. Bailey,* 53 S. D. 98, 220 N. W. 642, 60 A. L. R. 619. Here, in the surrounding facts and circumstances, we have much more. Much is said of the equities of the cause and this argument rests in the similarity of actions to enforce contracts to make wills and compel specific performance of contracts to convey property. We grant the law but deny its present applicability. A bequest to one child to the exclusion of another purports no necessary want of equity or justice, it may evidence the contrary. Nor is this, as argued, an attempt to enforce a mere oral contract. This is a contract evidenced in part by the writings, the wills, which one party has fully performed and is dead. All the equities demand performance by the other. Much argument and numerous authorities are presented in support of the proposition that to establish such a trust as is here sought the evidence must be clear, strong and unequivocal. Again, the rule must be admitted but its applicability denied since we think this evidence meets the rule. Simply stated the sole point of difference between court and counsel is, they think plaintiff's case on the facts is weak, we think it overwhelming. Moreover, we think the contents of the will of Mrs. Lawrence not only established but, on the whole record, admitted; hence we do not examine authorities cited on that point.

Taking the view we do of this evidence we think every question which can properly be raised has been definitely settled in this jurisdiction. *Brown v. Johanson,* 69 Colo. 400, 194 Pac. 943; *Hildebrand v. Rolf,* 100 Colo. 304, 67 P. (2d) 492. We need not here examine the facts of those cases. Their applicability is self evident.

The judgment is reversed and the cause remanded for further proceedings in harmony herewith.

MR. JUSTICE BAKKE and MR. JUSTICE OTTO BOCK, concur.