## No. 15,627.

TRINDLE, EXECUTRIX ET AL. *v.* ZIMMERMAN.

(172 P. [2d] 676)

Decided September 9, 1946.

Mr. HATFIELD CHILSON, Messrs. PERSHING, BOSWORTH, DICK & DAWSON, for plaintiffs in error.

Mr. HERMAN W. SEAMAN, Mr. FANCHER SARCHET, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court and are hereinafter referred to as there, or by name. For convenience, however, we refer to the deceased as Mrs. Lawrence and to the defendant in error as Zimmerman.

Mrs. Lawrence died leaving a will containing but a minor bequest to Zimmerman. Claiming that the two had theretofore, in pursuance of a valid contract, made reciprocal and irrevocable wills, each bequeathing to the other all property of which the testator died possessed, Zimmerman brought this suit praying that he be adjudged the owner of all which Mrs. Lawrence had bequeathed by her last will. Defendants, beneficiaries under that will, denied the execution of the alleged reciprocal wills and denied consideration and irrevocability. The cause was tried to the court and to review a judgment in favor of Zimmerman certain of defendants prosecute this writ. The only specification is "that the evidence is insufficient to sustain the judgment."

The following facts are either undisputed or found by

the trial court on ample, and generally overwhelming, evidence.

For some time prior to 1905 Zimmerman and Mrs. Lawrence resided together and alone on a ranch and for a short time in a livery operated by Zimmerman. They kept separate bank accounts and returned separate tax schedules, but in other respects worked and managed their property interests as if a partnership existed. Mrs. Lawrence had been married and divorced. Neither had dependents nor near relatives. Appearances and general reputation was to the effect that they maintained the most intimate relations although no formal marriage existed and no common-law marriage was claimed. Mrs. Lawrence acted as a sort of general planner and manager and Zimmerman did the bulk of the work. They engaged to a considerable extent in the livestock business and farming and their animals bore the brand of Zimmerman. This arrangement continued for approximately forty years until the death of Mrs. Lawrence, and the parties prospered. In the year 1905, at the same time and place and in the presence of each other, they executed identical wills, each bequeathing all property to the other. These were drawn by the same counsel and subscribed by the same witnesses. They were long kept with other important papers in a bank and when it closed business in 1926 were delivered to Mrs. Lawrence for safe keeping and eventually disappeared. Zimmerman had no knowledge of their loss, destruction or revocation until the death of Mrs. Lawrence in March, 1943. It then devloped that on November 26, 1941 she had, without the knowledge or consent of Zimmerman, made a new will by the terms of which she gave Zimmerman a practically valueless life estate in a certain property which stood in her name, and otherwise disposed of her remaining assets inventoried at over $20,000. This she distributed among defendants, some of whom were mentioned merely as friends, some as distant relatives, and two as charitable institutions. It appeared

from the will that she did not know the addresses of some of these beneficiaries. At the time of the death of Mrs. Lawrence all the property standing in the name of, or claimed by, either her or Zimmerman, had been accumulated by their joint efforts. At the time of the execution of the reciprocal wills Mrs. Lawrence stated "Jake and I have that all fixed up; whichever one of us goes first the other gets the property." At one time while these wills were in existence, she gave as her reason for not taking a certain requested course in a business transaction, that she "had a partner." The wills were witnessed by one Allen, an attorney, who drew them and by Frank G. Neville who testified on the trial. He read the will of Mrs. Lawrence at the time of signing and was told by those present who knew, that Zimmerman's will was identical. An intimate friend of the parties, well qualified to speak and wholly disinterested, testified that Mrs. Lawrence did no work from which she could derive an income other than on the homestead, received no inheritance that she had ever heard of, and obtained no money from any source other than the animals and crops on the farm. Shortly prior to the making of the wills Mrs. Lawrence stated to a witness that they were going to fix it so that if one died the other got all the property. "When I die everything will go to Jake, and when Jake dies everything will go to me. * * * We are going to have our wills made out." Similar statements of Mrs. Lawrence made while the reciprocal wills were still in existence were testified to.

Briefly the point argued by counsel for the defendants are: 1. No sufficient evidence of the reciprocal wills. 2. No sufficient evidence of the essential contract to execute them. 3. Lack of consideration and absence of evidence to support irrevocability.

1. Evidence of execution of the wills is all that could possibly be produced under the circumstances. The tongues of testator, drafter and one witness thereto have been stilled by death. The mouth of the other tes-

tator and beneficiary is stopped by statute. We have some evidence of a preexisting agreement and its purport and the execution of the wills under the circumstances is prima facie evidence of that contract. The evidence of the living witness is undisputed and ample on every point save irrevocability. The record permits of no conclusion except that the wills were executed as the testimony discloses.

██ ██ 2. That such wills are intended to be reciprocal must, of course, be established by evidence of some foregoing existing contract. However, like all other oral agreements to execute contracts all preexisting and conclusive negotiations are, so far as material, presumed to have been expressed in the writings themselves and when drafted and executed under the circumstances and with the formalities above set forth, the presumption that they were intended to be reciprocal becomes irresistible and could only be rebutted by the clearest evidence. No rebuttal of any kind appears in this record.

██ 3. Does the evidence support irrevocability and consideration therefor? On this subject the wills are silent. It is fundamental in the law of contracts, and has been repeatedly held in cases of reciprocal wills, that a promise is a sufficient consideration for a promise. It is here urged, however, that since Zimmerman is left free to dispose of his own estate he loses nothing by Mrs. Lawrence's execution of her late will. Carried to its logical conclusion this argument establishes that, in the absence of extraneous considerations, two persons situated as these testators were could never execute irrevocable wills in favor of each other because consideration would always fail when the deceased testator violated the agreement and thus left the living testator free to do likewise. We would be loath to raise such a barrier to the freedom of private contract. However, the circumstances surrounding the parties to these wills put upon them the stamp of irrevocability. Not alone the immediate conditions attending their execution but the

relationship, business and personal, of these testators prior to the transaction and for almost forty years thereafter. Another significant and undisputed fact intrudes itself: Some years after their execution Zimmerman was seriously ill and visited by relatives whose motives Mrs. Lawrence apparently suspected. She said to an intimate friend who testified on the trial, "If they came here to get Mr. Zimmerman's property it will do them no good because that has been taken care of between Mr. Zimmerman and I." If the wills were not considered by Mrs. Lawrence as irrevocable her statement was foolish and her future security anchored to thin air because Zimmerman was free then, or at any future time, to make a new will leaving all to the intruders.

The foregoing is further buttressed by an inevitable conclusion arising from the novel history of these parties as fully disclosed by the record. They conducted their joint affairs for more than thirty-five years on the basis of the permancy of these reciprocal wills and the revocation of one without consent of the other must have been fraught with gross injustice.

 That there is much diversity in the apparent conclusions reached by appellate courts in dealing with testaments similar to those here under consideration cannot be questioned. However, no two such cases ever present identical facts and each such decision, however broad its general statements, must be strictly applied to its own facts. So considering them and our foregoing conclusions on the record before us we are of the opinion that whatever confusion exists among other jurisdictions the applicable law governing the questions here presented has been definitely settled in our own. *Brown v. Johanson*, 69 Colo. 400, 194 Pac. 943; *Wehrle v. Pickering*, 106 Colo. 134, 102 P. (2d) 737.

The judgment is affirmed.

Mr. Justice Stone not participating.