No. 15,538.

BROTHE ET AL. *v.* ZAISS ET AL.
(183 P. [2d] 561)

Decided June 2, 1947. Rehearing denied July 14, 1947.

Mr. WILLIAM B. PAYNTER, for plaintiffs in error.

Mr. JOEL E. STONE, for defendant in error Anna Brothe Zaiss.

*In Department:*

MR. JUSTICE ALTER delivered the opinion of the court.

ANNA BROTHE ZAISS brought an action in the district court to foreclose a mortgage, and named Maude Brothe, personally, and as administratrix of the estate of Charles Brothe, deceased, Clara Brothe Epple, Minnie Brothe Guthner, Louise Brothe Benham, and Margaret Brothe Goody defendants. Subsequently Wm. Epple and Wm. Epple, Jr., were substituted for Clara Brothe Epple as a defendant. Trial to the court resulted in a decree in favor of plaintiff, to reverse which Maude Brothe, individually and as administratrix, has sued out this writ of error.

We will hereinafter refer to Anna Brothe Zaiss, plain-

tiff below, and one of the defendants in error here, as plaintiff; plaintiff in error, Maude Brothe, individually and as administratrix of the estate of Charles Brothe, will be hereinafter designated as defendant; Charles Brothe will be mentioned as decedent, and defendants in error, Wm. Epple and Wm. Epple, Jr.—substituted for Clara Brothe Epple—Minnie Brothe Guthner, Louise Brothe Benham and Margaret Brothe Goody will be denominated as codefendants.

Plaintiff alleged that on March 18, 1938, Charles Brothe made, executed and delivered to her his promissory note in the sum of $6,000, due three years after the date thereof, with a provision therein for additional and higher interest thereon after maturity, and for attorneys fees. To secure the prompt payment of this note, Charles Brothe made, executed, acknowledged and delivered to plaintiff a mortgage on certain real estate in Brush, Colorado.

Plaintiff further alleged the death of Charles Brothe on January 7, 1942, and the appointment of Maude Brothe as administratrix of his estate, and further alleged that Maude Brothe was the widow of Charles Brothe and that the other named defendants were his sisters and as such claimed some interest in the encumbered property and his estate. She prayed judgment for the amount due on the promissory note and for a foreclosure of the encumbered property.

Defendant Maude Brothe, in her individual and representative capacity, filed her answer, in which she admitted that she claimed an interest in the encumbered property and denies that the four individuals named as defendants with her have any interest therein. In addition to the answer she presented five affirmative defenses in which she alleges that the note secured by the mortgage is invalid because: (1) There was no consideration therefor; (2) the note was without consideration and was fraudulently obtained; (3) the note and security therefor was an attempted testamentary disposition

of decedent's property and therefore, not having been executed with the formalities of a will, was null and void; (4) undue influence in obtaining the note and security; and (5) payment. In addition to the five affirmative defenses she presented four counterclaims and cross claims, in the first of which she alleged that plaintiff and the four codefendants, or some of them, have personal property belonging to the estate and demanded an accounting thereof. In her second counterclaim and cross claim she alleged fraudulent transfer and assignment by decedent of personal property for the purpose of depriving her of her legal rights as his heir. In the third counterclaim and cross claim she alleged an attempted testamentary disposition is void because not executed with the formalities of a will. In her fourth counterclaim and cross claim she alleged that the decedent transferred certain properties and assets as a result of undue influence exerted by plaintiff and codefendants. She prayed for the dismissal of the complaint and for an accounting.

Plaintiff, answering the four counterclaims and cross claims, admitted the demand for an accounting and denied all other allegations thereof except those expressly alleged in her complaint. For a further answer to all matters alleged in defendant's affirmative defenses and counterclaims and cross claims, and as an affirmative defense thereto, plaintiff alleged a certain antenuptial agreement entered into between defendant and decedent which, she alleged, barred defendant from maintaining her affirmative defenses and counterclaims and cross claims. She also alleged a certain trust agreement executed by decedent which she likewise contends barred defendant from maintaining her affirmative defenses and counterclaims and cross claims. Defendant moved to strike the answer and affirmative defenses to her counterclaims containing the antenuptial agreement and trust agreement, which motion was denied.

At the conclusion of all of the evidence the court made

an "Historical Synopsis of Facts as Found" covering approximately fifteen pages, in which all issues were resolved in favor of plaintiff. To this "Historical Synopsis of Facts as Found" defendant filed a motion for a new trial in which she set forth thirty-six grounds therefor and, because we are not called upon to, and do not, determine the propriety of this procedure, we shall treat the motion for the new trial, as did counsel, as if the same were directed to the judgment and decree entered by the trial court. The motion for a new trial was overruled; judgment and decree was entered in favor of plaintiff and against defendant; and in this judgment and decree all issues were resolved in favor of plaintiff and against defendant.

Here, defendant relies upon ten specifications of points for a reversal, which her counsel summarizes as follows: "(1) The trial court should have entered judgment in favor of the administratrix for $4,114.57. (2) The trial court should have cancelled the alleged note and real estate mortgage of $6,000. (3) The trial court should have held the alleged antenuptial agreement between the parties to be null and void. (4) The trial court erred in the exclusion of certain evidence."

The evidence in the case is rather voluminous and extremely complicated. The record consists of 1066 folios; plaintiff's exhibits are numbered from A to KKK, and those of defendant are numbered from 1 to 18. The litigation arose between the widow of decedent and five of his sisters, and the evidence concerned business transactions between these parties subsequent to June 29, 1929—when defendant and decedent married—and prior thereto. At the trial defendant invoked the provisions of section 2, chapter 177, '35 C.S.A., and under the court's ruling neither plaintiff nor codefendants testified. At a pretrial conference, the genuineness and correctness of many documentary exhibits were admitted and thereby testimony respecting them was obviated, shortening, in a most commendable manner, the record. Plaintiff, after

offering and having admitted in evidence decedent's promissory note dated at Fort Morgan, March 18, 1938, due three years after date, in the principal sum of $6,000, and the mortgage securing the prompt payment of the same rested her case. All other exhibits offered by either plaintiff or defendant were admitted as a result of the pretrial conference subject only to objections as to their materiality and competency, and none thereof excluded, present any question of sufficient importance to require comment thereon.

From the record and numerous exhibits, we have gleaned the following facts which form a concise statement of the matters in controversy: Defendant and decedent were married on June 29, 1929, and on that date entered into a certain antenuptial agreement under which defendant was to receive for her personal use so long as the relationship of husband and wife existed between her and decedent the sum of $200 yearly, and, further, that out of decedent's estate she was to receive the sum of $2,000, and she waived any and all rights which she might have by reason of their marital relationship. We will hereinafter refer to the declaration of trust. In 1937 decedent sold ranch property in Adams County, Colorado, in which his brother and five sisters apparently claimed some interest, and at the same time, or shortly thereafter, he sold certain livestock on the ranch. From both transactions he received a considerable sum of money. A part of the sale price for the ranch property was delivered to one of his sisters, and in November, 1937, decedent purchased the Desky Hotel, in Brush, Colorado, for $9,500; some hotel equipment therein for $1,700, and later some other real estate in Brush, Colorado, for which he paid $2,500. The title to the tavern in the hotel which defendant operated was placed in her name. In 1939 decedent purchased two other properties in Brush for the sum of $2,500, and subsequently transferred title to one of these to defendant. Decedent delivered $7,300 realized from the sale of his

ranch property and livestock to Clara Brothe Epple, and when he purchased the hotel and the equipment therein, she repaid this entire amount, some of which was used in the purchase of the Desky Hotel and equipment and $1,000 was, at decedent's request, paid to defendant. In March, 1938, decedent made and executed the promissory note upon which this action was based and secured the payment thereof by a mortgage which was recorded March 21, 1938, and was by decedent listed as a liability in his financial statement to a bank.

Decedent became a patient at a Denver hospital on November 24, 1941, where he underwent a surgical operation, and passed away January 7, 1942.

November 22, 1941, defendant, at the dictation of decedent, wrote a letter directed "To Whom It May Concern," ordering that all checks in payment for cattle owned by decedent and sold, should be made payable to plaintiff, which letter was signed by decedent. In 1940 decedent had entered into a partnership arrangement in the cattle business with one Fender, under which arrangement decedent was to furnish the capital and Fender was to receive one half of the net profits for his share in the partnership. While decedent was in the hospital, cattle owned by him under the partnership arrangement were sold for the sum of $9,114.57, and the proceeds paid to plaintiff in accordance with the letter of instruction dated November 22, 1941. While decedent was in the hospital, and while payments were being made to plaintiff in accordance with the instructions contained in the letter mentioned above, defendant, at the request and in the presence of decedent, destroyed four notes in the aggregate amount of $5,000, made by decedent and which were payable to plaintiff. At least some of these notes, with the exception of the signature, were in defendant's handwriting. Defendant introduced in evidence checks from decedent to plaintiff, some of which contained notations indicating indebtedness due plaintiff from decedent and some of them bearing date

as early as 1924. Decedent's estate is of questionable solvency. It is questionable whether sufficient funds will be realized from the sale of the encumbered property to pay plaintiff's judgment in the sum of $9,430 and costs.

It is defendant's contention, supported by her own evidence, and fortified by some correspondence, that decedent's sisters were opposed to her marriage to decedent, but no evidence that, if such were the fact, it influenced decedent in any respect with reference to his conduct and action toward defendant. It also is the contention of defendant that some of the sisters had destroyed letters and other written evidence which would have substantiated her claim that they were in possession of funds which belonged to decedent and which they were withholding for the purpose of defeating her rights as the widow of decedent and administratrix of his estate. Evidence was introduced to establish that prior to decedent's removal to the hospital in Denver, plaintiff had stated that decedent was indebted to her in the sum of $5,000. At the time of the statement no mention was made of any indebtedness owing her upon the note upon which this suit is based.

The exhibits introduced by plaintiff, as well as those of defendant, definitely establish that decedent, in his lifetime, had had a large number of business transactions with plaintiff and many with the codefendant sisters, and that either through ignorance, or lack of business experience, no proper books of account were kept by any of the parties to this litigation.

By stipulation defendant took the depositions of Clara Brothe Epple and Minnie Brothe Guthner, which depositions are attached to the record. Although the depositions of Louise Benham, Margaret Goody, and plaintiff were specifically offered, the same do not appear in the record. Upon the offer of these depositions in evidence, defendant's attorney interposed an objection upon the provisions of section 2, chapter 177, '35 C.S.A., which objection was sustained. Consequently, although an ac-

counting was demanded of plaintiff and defendant's co-defendants, they were not permitted to testify, nor were their depositions, which had been taken at the instigation of defendant, admitted in evidence. Plaintiff makes no cross specification of points, therefore, we do not pass upon the correctness of the court's ruling in excluding these witnesses and their depositions, nor do we determine whether defendant, as administratrix, waived the provisions of said section 2 and thereby was estopped to object to the consideration of the depositions or challenge the competency of these witnesses.

We shall consider the specification of points as summarized by defendant in the order hereinbefore noted.

 1. It will be noted that on November 22, 1941, just prior to decedent's departure for the hospital in Denver, defendant, at his request and dictation, prepared an order authorizing the payment to plaintiff of the proceeds realized from the sale of his cattle. This order was signed by decedent and delivered to plaintiff. While decedent was in the hospital, and after the sale of some, if not all, of his cattle, defendant, at decedent's request and in his presence, destroyed four notes of decedent payable to plaintiff in the aggregate amount of $5,000.

A. F. Fender, a witness called on behalf of defendant, testified without objection that the night before decedent was taken to the hospital in Denver, plaintiff stated to him that decedent was indebted to her in the sum of $5,000, which indebtedness she was hesitant about mentioning to decedent because of his illness; and by deposition of Eva Schopflin it appears that decedent admitted an indebtedness to plaintiff in the sum of $5,000.

Subsequent to decedent's removal to the hospital, cattle were sold for $9,114.57, which sum was paid plaintiff in accordance with the order hereinbefore mentioned.

In the court's "Historical Synopsis of Facts as Found" we find the following with reference to the cattle transactions mentioned in the order: "While Brothe was in the hospital the bulk of the partnership was sold for

approximately $8700.00 [$9114.57], for which Anna Brothe Zaiss received the checks. She seems to have retained half this money and to have given Fender his half in partnership settlement. The evidence discloses that this was paid Anna Brothe Zaiss to apply on indebtedness or loans she theretofore had made to her brother, not connected in any way with the $6000.00 covered by the mortgage." Under the partnership arrangement as testified to by Fender, and considered to have been the partnership arrangement by all parties to this litigation, decedent was to purchase cattle, and Fender, his partner, was to render certain services in connection with this cattle venture and to receive one half of the net profits as his share in the partnership business. This being the arrangement, it is obvious that if the court's finding with reference to the payment by Anna to Fender was correct, and parenthetically we say there is no evidence in the record to support it, Fender would have been paid, under the order, one half of the gross value of decedent's cattle rather than his rightful share of profits. It is conceded by plaintiff's counsel that Anna retained the $9,114.57, and did not account therefor to either Fender or to defendant as administratrix, or otherwise, and that the court's finding is incorrect. The order under which the sum of $9,114.57 was paid Anna was, as we have said, written by defendant and thereupon signed by decedent, and it is silent as to its purpose. It is as follows: "Brush, Colo. Nov. 22-1941. To Whom It May Concern that all checks for cattle sold owned by Chas. Brothe be made out to Mrs. Anna Brothe Zaiss [signed] Chas. Brothe." Although many exhibits disclose financial transactions between decedent and plaintiff here, dating from 1924 to the time of decedent's death, some indicating that they were for interest upon some undisclosed principal sum, nevertheless, without the testimony of plaintiff and defendant's codefendants and in the absence of business-like records, it was impossible for the trial court, as it is for us, to determine just what

indebtedness existed between plaintiff and decedent at the time of his death. We shall assume, as the trial court evidently did, that the purpose of the order of November 22 was to permit plaintiff to retain the proceeds from sales in payment of any indebtedness then existing between decedent and herself, and an examination of the record, having in mind the testimony of Fender and Schopflin, justifies the conclusion that decedent was indebted to plaintiff in the sum of $5,000, exclusive of the note and mortgage upon which this action was brought. It is conceded that under the order plaintiff received $9,114.57,. and the record contains no evidence which would warrant a conclusion that more than $5,000 of this sum was rightfully due plaintiff. If in this we are correct, plaintiff retained in her possession $4,114.57 rightfully belonging to decedent's estate, and defendant, as administratrix, had not only the right, but was under a duty, to take whatever action was necessary to bring assets belonging to the estate into the administration proceedings. S.L. '41, c. 235, §26; *Dennison, Admr. v. Jerome,* 43 Colo. 456, 96 Pac. 166; *Grover v. Clover, Admr.,* 69 Colo. 72, 169 Pac. 578; *Norris v. Bradshaw,* 92 Colo. 34, 18 P. (2d) 467; *Weaver, Admx. v. Dugan, Admr.,* 99 Colo. 74, 60 P. (2d) 227.

The only evidence of any indebtedness owing by decedent to plaintiff clearly establishes that the amount thereof was $5,000, and the fact that decedent's notes in this amount, payable to plaintiff, were destroyed after the sale of the cattle and while he was in the hospital, is a strong indication that decedent was not indebted to her in the sum of $9,114.57, the proceeds of the cattle sale. There is no evidence to establish that decedent, by his order of November 22, 1941, intended thereby to make a gift to plaintiff. Although on the motion for a new trial this matter was called to the trial court's attention and it was conceded that decedent's partner received no part of the sale price of the cattle, nevertheless the findings of fact were not changed. However, the only evidence of

indebtedness being that the amount was $5,000, the trial court erred in entering a judgment permitting plaintiff to retain all of the moneys received by her under the order.

The judgment, accordingly, is modified, and defendant as administratrix of the estate is entitled to a credit on the promissory note here involved in the sum of $4,114.-57, which credit shall be made as of the date of her appointment as administratrix, which date is not disclosed in the record, and with the credit so made, the foreclosure proceedings should proceed for the balance then found to be due on the promissory note secured by the mortgage and upon which this action is based.

 2. Under this summarization of specifications, it is defendant's contention that the note for $6,000, secured by the real estate mortgage upon which this action was based, should have been cancelled. This contention is made upon the assumption that the note was without consideration, was fictitious, fraudulently secured, and an attempted testamentary disposition of decedent's property, obtained by plaintiff as a result of undue influence, and payment thereof, all as alleged in defendant's five affirmative defenses. The trial court found against defendant on all of these affirmative defenses and in favor of plaintiff thereon.

We have noted defendant's testimony respecting the $6,000 note and mortgage, and in substance it amounts to a statement that she did not know that decedent had received $6,000 from the plaintiff; that his bank account did not disclose the receipt of this sum of money; and that she first learned of this indebtedness after decedent's death. It is defendant's contention that considering the relationship existing between plaintiff and decedent, as well as her codefendants, that the burden was upon plaintiff to establish by a preponderance of evidence, the honesty and good faith of this transaction. If we assume that ordinarily her contention is correct, our attention has not been called to any decision announcing

the rule for which she contends under circumstances such as existed here. The title to the hotel property purchased by decedent on December 1, 1937, bears cancelled documentary stamps thereon indicating a purchase price of $9,500. The contract dated November 15, 1937, under which decedent purchased for defendant certain personal property in the hotel property in Brush, disclosed a consideration of $1,700. An examination of the decedent's bank account, statements of which are exhibited here, does not disclose a withdrawal of funds sufficient in amount to indicate that in either one of these transactions did he use money on deposit in the banks in payment therefor, nevertheless it was a cash transaction. It also should be borne in mind that the note upon which the account is based was dated March 18, 1938, and the only financial statement appearing in the record, dated subsequent to the purchase of the Brush property, lists as an "encumbrance on real estate Annie Brothe $6,000." This financial statement is dated "9-2-41." So far as the exhibits are concerned, the bank statements offered in evidence covering a period prior and subsequent to December 1, 1937, definitely establish that neither decedent nor plaintiff had $6,000 on deposit in banks at the time decedent purchased the Brush property for $9,500 or at the date of the $6,000 note involved in this action. It also should be borne in mind that either because of defendant's objection, or the court's ruling thereon, plaintiff and codefendants were not permitted to testify with reference to financial transactions with decedent, although defendant demanded an accounting based thereon. Under these circumstances, it was held that defendant, seeking affirmative relief as administratrix and individually, under her cross claims and counterclaims might testify with reference to the very matters upon which she demanded an accounting, and at the same time foreclose those from whom an accounting was demanded from testifying. Defendant then asserts that because of the relationship the burden was upon these who

were thus excluded. This does not comport with any equitable principles known to us. Particularly is this true where the exhibits and all of the admissible evidence justifies the conclusion that decedent here, as well as plaintiff and codefendants, in all of their business transactions as disclosed by the record, conducted the same in a most unbusinesslike manner. Defendant here is in no position to seek equitable relief and at the same time foreclose any possibility of her demanded accounting by invoking the provisions of a statute which would definitely preclude it. Under the circumstances here appearing it is not necessary for us to definitely announce a rule of law governing the particular question now under discussion, for if we should hold that the burden of proof was upon defendant to establish by a preponderance of the evidence that the note secured by the mortgage was invalid because: There was no consideration; because it was fraudulently obtained; because it was an attempted testamentary disposition of decedent's property without the formalities of a will; because undue influence had been used in obtaining it, and because of payment thereof, the trial court did not so find. On the other hand if the burden of proof was on the plaintiff and codefendants to establish by a preponderance of the evidence the negative of these defenses, the trial court so found, and under these circumstances we will not disturb its findings adverse to defendant.

3. Plaintiff, in her answer to the counterclaims and cross claims of defendant, attached thereto a declaration of trust in which decedent constituted Richard Brothe as trustee, "To receive, acquire, take and hold title to the following real-estate, situate in the County of Adams and State of Colorado, to-wit: All of the real-estate situate in said County as shown by the records in the office of the Recorder of the County of Adams, State of Colorado; on and at one minute prior to my demise, at whatever time and whatever place, whenever and however I may die, and direct that said title to said

real property and that all of my personal property, both real and mixed, that I may stand seized at said time, shall remain in my said trustee for the use and purposes as I hereby direct.

\* \* \*

"At my death said trustee shall immediately take possession of and have control of all of my property, both real, personal and mixed and that he shall first, out of the proceeds of my cash monies, should he have sufficient cash, in his hands at the time of my death, received from me, by this declaration of trust, pay the sum of Two Thousand Dollars to my wife, Maude Brothe, should she be alive at the time of my death. In case there is not sufficient cash in hand to pay the said Two Thousand Dollars, I direct my trustee herein to forthwith and immediately convert such of my estate embraced in this declaration of trust as may be necessary into cash and to pay the Two Thousand Dollars to the said Maude Brothe."

The declaration then provides for the distribution of the balance of the trust property. Defendant likewise executed a declaration of trust under which title to her property should vest in a named trustee one minute before her death and certain provisions therein for its distribution by her trustee. These declarations of trust were dated June 29, 1929, which appears to be the date upon which defendant and decedent were married. Likewise, on said date an antenuptial agreement was entered into by decedent and defendant wherein decedent waived all rights of inheritance as an heir of defendant, and defendant waived all rights of inheritance as an heir of decedent, but decedent was to pay two hundred dollars each year of his married life to be expended for her personal use, and she was to receive $2,000 upon decedent's demise, which sum was to be paid her by the trustee named in decedent's declaration of trust. The record discloses that the trustee so named in decedent's declaration of trust predeceased him, and no provision

for a successor was made. The trial court found that the declaration of trust was invalid because no title or interest passed in praesenti thereunder to the trustees, and to this finding no objection was or is made. The trial court determined that the antenuptial agreement or contract was valid and binding and that defendant's right of inheritance, and interest in decedent's estate, were fixed thereby. The trial court also found that defendant could receive the sum of $2,000 as provided in the antenuptial agreement or contract and was not entitled to any other part or interest in decedent's estate. Defendant contends that the court erred in finding that the antenuptial agreement or contract was valid, and that she was entitled to $2,000 and no more as provided therein. She moved to strike the antenuptial agreement or contract, and the declaration of trust, and this motion was denied. In this ruling we believe the court committed error.

Under section 23, article 6 of the state Constitution, the county court has "original jurisdiction in all matters of probate, settlement of estates of deceased persons," etc. The determination of defendant's interest in decedent's estate, with or without the antenuptial agreement or contract, was a matter having to do with the administration of the estate, as well as the settlement thereof. In the first instance it was a matter exclusively in the jurisdiction of the county court to determine whether the antenuptial agreement or contract was valid and binding or whether, as defendant contends, it was invalid, and she as the sole and only heir at law of decedent, was entitled to enjoy his entire estate after the payment of all legal claims against the same.

4. We have carefully examined the record, including that portion concerning the evidence which was excluded by the trial court, of which exclusion defendant complains. Our conclusion as a result of the examination is that no prejudice resulted to defendant by reason of the court's rulings, and, consequently, a recitation of the questioned evidence would unduly and unneces-

sarily prolong this opinion. The trial court in its judgment and decree of foreclosure, entered judgment against defendant as administratrix of the estate of Charles Brothe, deceased, in the sum of $6,000, together with interest and costs in accordance with the provisions of the note and exclusive of costs to the sum of $9,340. The record does not disclose that plaintiff complied with the provisions of section 5, chapter 85, S.L. 1939, which are:

"That section 208 of chapter 176, 1935 Colorado Statutes Annotated, be, and the same is hereby amended to read as follows:

"Section 208. *Deficiency claims following foreclosure.* —No deficiency claims or judgment shall be made or allowed against any estate of a mental incompetent or decedent where sale in foreclosure of the mortgage, deed of trust or other instrument securing such indebtedness shall have been had and made, either by sale by the public trustee or in foreclosure by suit, where the foreclosure sale shall have been made subsequent to the adjudication of mental incompetency of the mental incompetent or subsequent to the death of the decedent, unless prior to such foreclosure sale the claim upon the indebtedness secured by the deed of trust, mortgage or other instrument shall have been filed in such estate within one year after the granting of letters therein and unless, prior to such foreclosure sale, either such claim shall have been allowed in such estate or permission to sell in such foreclosure shall have been granted by the county court in which such estate is being administered."

Because of this failure, the court erred in entering judgment against defendant as administratrix.

The trial court also erred in its judgment because of its failure to credit $4,114.57 on plaintiff's promissory note involved herein as of the date of defendant's appointment as administratrix; it further erred in determining that the antenuptial agreement was valid and enforcible and determinative of defendant's rights as the

widow and heir of decedent. That determination in the first instance was exclusively within the original jurisdiction of the county court in which the estate was then pending. It also erred in entering judgment against the administratrix for the amount due upon plaintiff's promissory note secured by mortgage.

The evidence in the case is largely documentary and voluminous, because of which our decision in this matter has been unduly delayed. All the circumstances considered, we have determined that we should order a modification of the judgment, and, accordingly, the judgment is ordered modified as indicated herein, and when so modified, is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HILLIARD concur.