## No. 16,807.

### HOFF ET AL. *v.* ARMBRUSTER.
(242 P. [2d] 604)

Decided February 11, 1952.   Rehearing denied March 24, 1952.

Mr. Isaac Mellman, for plaintiffs in error.

Mr. Harold B. Wagner, Mr. Carl A. Wyers, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

We will herein refer to the parties as they appeared in the trial court, where plaintiffs in error were plaintiffs.

Plaintiffs, by writ of error, seek reversal of the judgment of the trial court entered in favor of defendant Gladys A. Armbruster at the conclusion of the trial of issues to the court without a jury.

Plaintiffs, in their complaint, named as defendants Gladys A. Armbruster, as administratrix and heir of Minnie S. Phillips, deceased, together with all other heirs at law of said deceased. The only parties affected by the judgment, however, are the plaintiffs and Gladys

A. Armbruster, due to the fact that other defendants were nonresidents and the trial court ruled that as to them it had no jurisdiction.

In the complaint it was alleged that William Phillips and Minnie S. Phillips were husband and wife who agreed to make mutual and reciprocal wills and that such wills were to be irrevocable; that pursuant to the agreement said mutual and reciprocal wills were duly executed in May 1936; that upon the death of the husband in November, 1946, the will executed by him was still in existence and said husband had fully performed his agreement. Thereafter, and on January 8, 1948, the wife, Minnie S. Phillips, died but no will executed by her could be found.

Plaintiffs allege that they are beneficiaries named in said "mutual and reciprocal" wills; they seek to impose a trust upon the assets of the estate of Minnie S. Phillips, in the hands of defendant, and pray an order directing that said trust be executed by distribution of the net assets of said estate as directed under the terms of the said will which was executed pursuant to the alleged contract between William Phillips and Minnie S. Phillips.

The answer of Gladys A. Armbruster contained nine separate alleged defenses including a denial of the existence of any contract between said husband and wife to make mutual, reciprocal and irrevocable wills. Upon the trial of the case no material dispute, concerning the facts upon which plaintiffs rely, was shown, and the ruling of the trial court was, in effect, that the conceded facts were insufficient under the law to warrant the relief sought.

Defendant's attorneys, by cross specification of points, seek review of the judgment of the trial court in so far as the court refused to sustain the eight defenses relied upon in addition to that defense forming the basis of the court's judgment.

Questions for Determination

First: *Should we hold that the evidence upon which plaintiffs rely was sufficient, as a matter of law, to establish an enforceable agreement between the husband and wife for the execution of mutual, reciprocal and irrevocable wills?*

This question is answered in the affirmative. The trial court entered findings of fact amply supported by the evidence, from which we quote the following:

"1. On May 15, 1936, Minnie S. Phillips and William L. Phillips were husband and wife.

"On either May 14 or 15, 1936, Mr. Phillips telephoned Hugh B. Kellogg, his attorney, and said that he and his wife were going to California and that he wanted a will drawn. On May 15 Mr. and Mrs. Phillips came to Mr. Kellogg's office and told him what he, Mr. Phillips, wanted in his will. Mr. Kellogg thereupon drew Mr. Phillips' will. After Mr. Kellogg had drawn Mr. Phillips' will, Mrs. Phillips said that as long as he was drawing one for Mr. Phillips, she thought she might as well have one drawn too. Mr. Kellogg asked her what she wanted in it, and she said about the same as Mr. Phillips' will. Mr. Kellogg thereupon drew a will for Mrs. Phillips. At that time they both executed their wills, which were duly attested. One of the wills thus executed was the will of Minnie S. Phillips, Exhibit B attached to the complaint. The original of said will was properly attested. That evening Mr. Phillips telephoned Mr. Kellogg and said, "There is an error in the will you drew, in which you designated a niece instead of a niece in law." He wanted that change made. On the morning of May 16 Mr. and Mrs. Phillips came to Mr. Kellogg's office and he drew a new will for Mr. Phillips, which was executed at that time. That will is Exhibit A, dated May 16, 1936, and attached to the amended complaint. At that time the will, Exhibit B, that Mr. Kellogg drew for Mrs. Phillips was delivered to her and at the same time Exhibit A, the will drawn for Mr. Phillips, was

delivered to him; that Exhibit B is a true and correct copy of the will of Minnie S. Phillips, except for the signature of Minnie S. Phillips, which appeared on the original will, and except for the signatures of the attesting witnesses, which appeared on the original will.

"2. That Exhibits A and B were drawn by the same counsel, Hugh B. Kellogg, and were subscribed by the same witnesses and in substance were identical, i.e., the residue of Mrs. Phillips' estate was given to Mr. Phillips, and the residue of Mr. Phillips' estate was given to Mrs. Phillips. All other provisions were similar.

"3. That William L. Phillips never revoked his will during his lifetime, and died on or about November 1, 1946, leaving said will in full force and effect. That his will was deposited with the Clerk of the County Court after his death, but never probated. The reason that the will of Mr. Phillips was never probated was because the only property which he left was in joint tenancy with his wife. His widow, Minnie S. Phillips, filed, signed and acknowledged, an inheritance tax application with the Inheritance Tax Department of the State of Colorado, in which she stated that William L. Phillips left a will. She attached a copy of Exhibit A to the inheritance tax application. In answer to the question on the inheritance tax application as to whether letters testamentary or of administration were granted, she replied, "No—property in joint tenancy, no estate."

"4. Minnie S. Phillips died January 8, 1948. Upon her death no will was found and, hence, by presumption of law, her will (Exhibit B) was revoked or destroyed in her lifetime and she died intestate. Her estate is now being probated as an intestate estate.

"5. Minnie S. Phillips left an estate valued at approximately $50,000, and William L. Phillips left nothing other than the property received by Minnie S. Phillips in joint tenancy."

The trial court drew the conclusion of law upon these facts as follows: "The Court finds and holds that the

foregoing facts do not establish by clear, convincing and. unequivocal evidence that said wills were executed by Mr. and Mrs. Phillips in pursuance of an agreement between them, or that the execution of one will was the consideration for the execution of the other will, or that there was any understanding between Mr. and Mrs. Phillips that on the death of one the will of the survivor was irrevocable."

In addition to the facts set forth in the formal findings above quoted, there was evidence that Mrs. Phillips called attorney Kellogg on the phone the morning the wills were completed and informed him that they "were leaving for California right away and she wanted to get the wills made up so they could leave that day." Other evidence, not included in the court's findings, was that, on June 15, 1937, Mrs. Phillips wrote a letter to the attorney saying that, "Mr. Phillips wants to destroy the wills, so if you will please destroy your copy also or send it to us and we will destroy it." The letter gave as reasons for Mr. Phillips' wish to destroy the wills, certain conditions not to his liking in the family relationships of beneficiaries named. It further appears in evidence that at about the time of the husband's death the surviving widow paid the sum of $1,000.00 to Mattie Seimens (now Mattie Twitchell one of the plaintiffs). The wills alleged to have been executed by Mr. and Mrs. Phillips contained a bequest to Mattie Seimens in the following words: " * * * any balance up to and including the sum of One Thousand Dollars ($1000.00) remaining in my estate after the items in paragraph First are paid and discharged, said amount to be payable at the rate of Twenty-five Dollars ($25.00) per month * * *."

It is unquestionably the rule that to establish the trust for which plaintiffs contend, the evidence in support thereof must be clear, strong and unequivocal. In the case of *Wehrle v. Pickering*, 106 Colo. 134, 102 P. (2d) 737, we recognized this rule, and in that opinion stated: "Simply stated the sole point of difference be-

tween court and counsel is, they think plaintiff's case on the facts is weak, we think it overwhelming." In the case at bar we find presented the same situation, plaintiffs contending that the facts above set forth are sufficient to meet the requirements of the rule, whereas the trial court held otherwise. Plaintiffs rely on *Wehrle v. Pickering, supra; Brown v. Johanson,* 69 Colo. 400, 194 Pac. 943; *Hildebrand v. Rolf,* 100 Colo. 304, 67 P. (2d) 492; *Ireland v. Jacobs,* 114 Colo. 168, 163 P. (2d) 203; *Trindle, Executrix v. Zimmerman,* 115 Colo. 323, 172 P. (2d) 676; and *Williams v. Pollard,* 101 Colo. 262, 72 P. (2d) 476.

In *Trindle v. Zimmerman, supra,* under facts somewhat similar to those in the instant case, we said: "That there is much diversity in the apparent conclusions reached by appellate courts in dealing with testaments similar to those here under consideration cannot be questioned. However, no two such cases ever present identical facts and each such decision, however broad its general statements, must be strictly applied to its own facts. So considering them and our foregoing conclusions on the record before us we are of the opinion that whatever confusion exists among other jurisdictions the applicable law governing the questions here presented has been definitely settled in our own. *Brown v. Johanson,* 69 Colo. 400, 194 Pac. 943; *Wehrle v. Pickering,* 106 Colo. 134, 102 P. (2d) 737."

■ We have carefully compared the facts disclosed by the record in the case of *Wehrle v. Pickering, supra,* with those here involved. While they are not in all respects identical, there is a substantial similarity in the evidence there relied upon, and the equitable relief sought is substantially the same in both cases. In the Wehrle case we reversed the judgment of the trial court which found no sufficient evidence to establish a contract for mutual, reciprocal and irrevocable wills, and held that the evidence was "overwhelming" in support of such an agreement. We stated in that case that: "The

record as it stands leads to the inescapable conclusion that Mr. and Mrs. Lawrence entered into an agreement to execute mutual and irrevocable wills with the understanding that on the death of either the other was bound, and that record permits no contrary inference. Any other conclusion puts upon their conduct the stamp of improbability and absurdity." Accepting this strong language as a correct statement of the law applicable to the facts there considered, it is clear that the undisputed evidence now before us was sufficient to require a finding that Mr. and Mrs. Phillips had agreed to make mutual, reciprocal and irrevocable wills. As a matter of law the trial court erred in finding to the contrary.

We point out that the exhibits in this case disclose that at the time of the death of Mrs. Phillips in January, 1948, she left eighteen heirs at law, all of whom were nieces and nephews and none of whom are described as minors. In the separate wills which she and her husband signed in 1936, only three of these nieces and nephews received bequests. One brother and one sister of Mrs. Phillips, each of whom predeceased her, were named beneficiaries. Thus by the wills signed by each testator, five heirs at law of Mrs. Phillips were selected as beneficiaries under each will and at least fifteen of her nieces and nephews, including defendant, were excluded from participation in her estate or in his estate.

In each of said wills the relatives of Mr. Phillips, who were made beneficiaries, were one daughter, two granddaughters and a son-in-law (husband of the daughter specifically mentioned). The record is silent as to whether he had other heirs at law. The relatives of Mr. Phillips who were thus mentioned were related by a former marriage and were unrelated by blood to Mrs. Phillips.

It would be unreasonable to assume that Mr. Phillips would select five of his second wife's relatives out of at least eighteen or twenty who might qualify as heirs, without consultation and agreement with his wife with

regard thereto. It is equally unreasonable to assume that Mrs. Phillips would select, from all those who might be entitled to share as heirs or beneficiaries of her husband, the four persons named by her to share in her estate, except after consultation and agreement with her husband. These wills were prepared and executed at the same time, and each person signed in the presence of the other and accepted delivery at one and the same time. About one year thereafter Mrs. Phillips, by letter, treated the wills as being inseparable. After the death of Mr. Phillips she produced his will, to be lodged in court, and justified failure to probate the same on the ground that his property stood in joint tenancy, but nevertheless asserted in her application for tax waiver that he died leaving a will. She paid one thousand dollars to the daughter of her husband, indicating a feeling of responsibility under the terms of the will, which was not probated.

All of these facts and circumstances lead unmistakably to the conclusion that Mr. and Mrs. Phillips made an agreement to execute mutual, reciprocal and irrevocable wills, and, in the face of full compliance by Mr. Phillips, this contract could not be revoked after his death. As we said in *Trindle v. Zimmerman, supra:*

"1. Evidence of execution of the wills is all that could possibly be produced under the circumstances. The tongues of testator, drafter and one witness thereto have been stilled by death. The mouth of the other testator and beneficiary is stopped by statute. We have some evidence of a preexisting agreement and its purport and the execution of the wills under the circumstances is prima facie evidence of that contract. The evidence of the living witness is undisputed and ample on every point save irrevocability. The record permits of no conclusion except that the wills were executed as the testimony discloses.

"2. That such wills are intended to be reciprocal must, of course, be established by evidence of some foregoing

existing contract. However, like all other oral agreements to execute contracts all preexisting and conclusive negotiations are, so far as material, presumed to have been expressed in the writings themselves and when drafted and executed under the circumstances and with the formalities above set forth, the presumption that they were intended to be reciprocal becomes irresistible and could only be rebutted by the clearest evidence. No rebuttal of any kind appears in this record."

Second: *Is there any merit to the cross specification of points directed at the trial court's refusal to sustain alleged defenses not hereinabove considered?*

█ This question is answered in the negative. The nature of the additional defenses upon which defendant relied, is clearly indicated by the conclusions of law which the trial court entered, separate paragraphs of which were directed to each. We quote from the court's "Conclusions of Law" as follows:

"1. The Court has jurisdiction over the defendant, Gladys A. Armbruster, individually. 2. The fact that the will of William L. Phillips was not formally probated is immaterial in view of the facts. 3. The issues herein have not heretofore been finally decided and are not res adjudicata. 4. The plaintiff has not made an election of remedies. 5. The fact that Minnie S. Phillips received nothing under the will of William L. Phillips is not a sufficient defense, as a matter of law. 6. The fact that Minnie S. Phillips had an estate valued at about $50,000 and that William L. Phillips left nothing is not a sufficient defense, as a matter of law. 7. The fact that this action was brought more than six months after the qualification of the administratrix of the Estate of Minnie S. Phillips is not a sufficient defense, and the fact that plaintiff failed to file a claim against the Estate of Minnie S. Phillips is likewise not a sufficient defense. 8. The statute of frauds, Chapter 71, Section 12, of the 1935 Colorado Statutes Annotated, is inapplicable. 9. All necessary parties are parties to this

case. 10. It was not necessary that the filing of this suit be withheld until after distribution of all assets of the estate."

It is apparent that the alleged defenses referred to in these conclusions have no foundation in law under the facts of the case. The trial court committed no error in holding to that effect. Under our view of the controlling question first treated in this opinion, the judgment is reversed and the cause remanded with direction to enter judgment as prayed for by plaintiff.

MR. JUSTICE HOLLAND and MR. JUSTICE KNAUSS did not participate.

On Petition for Rehearing.

MR. JUSTICE MOORE.

The case of *Brothe v. Zaiss,* 116 Colo. 472, 183 P. (2d) 561, while not cited in the briefs filed in this cause, is relied on in the briefs presented in another action *(Hoff v. Armbruster,* 125 Colo. 323, 244 P. (2d) 1069, decided this date), involving a different phase of the dispute between these parties. The Brothe case is cited as authority for the proposition that the district court could not entertain the action for the reason that the county court had exclusive power to determine the validity of the alleged contract for mutual wills under its original jurisdiction in matters of probate and settlement of the estates of deceased persons.

*Brothe v. Zaiss, supra,* was an action to foreclose a mortgage. The surviving widow of the mortgagor was named defendant in her capacity as administratrix and as an heir at law. She contested the validity of the mortgage on five separate and distinct grounds and presented four counterclaims. For answer to these counterclaims plaintiffs alleged that an antenuptial marriage contract prevented a recovery thereon. The facts shown by the opinion in that case are much involved and there is little similarity between them and those disclosed by

the record now considered. If that opinion, as applied to the facts there considered, contains any language not consistent with our conclusion herein, to that extent *Brothe v. Zaiss, supra,* is overruled.

MR. JUSTICE ALTER formerly concurring now dissents.